# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KENNETH EUGENE SPEIGHT,
             Plaintiff,

   -vs-                                    Civil Number 1:07-cv-208(RCL)

FEDERAL BUREAU OF PRISONS,
             Defendant.

## MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, Kenneth Eugene Speight, and moves the Court for entry of Order granting judgment in his favor against the Defendant, Federal Bureau of Prisons, on grounds that there are no material issue in dispute and the Plaintiff is entitled to judgment as a matter of law, as is more specifically and articulated in the accompanying Memorandum, Statement of Facts and Exhibits is support.

WHEREFORE, the Plaintiff respectfully requests this Motion be granted.

Dated October 29, 2007

                                   Respectfully Presented,

                                   _____
                                   Kenneth Eugene Speight
                                   c/o P.O. Box 8000
                                   Bradford, Pennsylvania
                                                [16701]

**RECEIVED**

NOV 1 - 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KENNETH EUGENE SPEIGHT,
          Plaintiff,

     -vs-                              Civil Number 1:07-cv-208(RCL)

FEDERAL BUREAU OF PRISONS,
          Defendant.

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Plaintiff has moved the Court to enter Order for summary judgment in his favor on the grounds that, there are no genuine issue as to any material fact, and he is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

In February 1998, the Plaintiff was imprisoned at "medium security" FCI Ray Brook, New York, while serving a 105-month sentence for violation of 18 USC §§ 922(g) and (k), possession of a firearm by a convicted felon and possession of a firearm with an obliterated serial number.

In March 1998, a BOP employee, Dr. Gilbertson, made an erroneous classification determination that the Plaintiff was required to participate in her drug education class because, in her opinion, it was possible that "drug abuse may have contributed to, the Plaintiff's offense. As a consequence of the erroneous assertion being entered into the Plaintiff's records, he was restricted to the lowest pay grade at his prison job.

1

In September 1999, the Plaintiff discovered that he had been given a custody classification score of Public Safety Factor "Greatest Severity." BOP employee, Case Manager Picerno admitted to the Plaintiff that the application of a Public Safety Factor had been in error, and as a result, his custody classification had been improperly scored. On October 1, 1999, Picerno removed the erroneous Public Safety designation. When properly scored, the Plaintiff's correct custody classification was a "low" security prisoner. However, Picerno had a "Greater SEcurity Management Variable" applied to the Plaintiff's classification in order to preclude him from being transferred to a low-security facility. Picerno relied upon the erroneous assertion that, the PLaintiff was required to take a drug education program, and the false claim that he was "argumentative" and had "difficulty communicating with staff," as the justification for her determination that the Plaintiff required "greater security" supervision. There was no factual bases for these false and erroneous assertions. Nevertheless, the Greater Security Management Variable was applied to the Plaintiff indefinitely with no expiration date.

Officials at FCI Ray Brook also maintained a false assertion in the Plaintiff's custody classification record that there were "outstanding arrest warrants' and "pending criminal court charges" against him, thus, requiring a security designation which precluded his placement in a low-security facility. The Plaintiff requested the false data be corrected, however, BOP employees refused to change the erroneous information or to make any effort to verify its accuracy.

2

In July 2002, the Plaintiff was transferred to FCI Allenwood, Pennsylvania. Although, the Plaintiff's custody classification score was "low" security, the Greater Security Management Variable obtained by Picerno in 1999 had remained in effect.

At FCI Allenwood, BOP employee Foura admitted to the Plaintiff that he was not required to participate in a drug education program as had been falsely claimed by officials at FCI Ray Brook. However, Foura entered false classification data into the Plaintiff's record that he was a "current violence" felony offender. Yet, Foura knew or had reason to know that the Plaintiff was not serving a sentence for any violent offense. In fact, there was no record of the Plaintiff ever even being charged with a violent crime.

In June 2004, the Plaintiff initiated a civil action against several BOP officials at FCI ALlenwood. BOP employees Sims and Foura made application to transfer the Plaintiff out of the Northeast Region to Bennettsville, South Carolina. In January 2005, Sims and Foura re-entered the Greatest Severity Public Safety Factor data in the Plaintiff's classification records in order to raise his custody level to medium security without need for a "management variable."

In the BOP Program Statement governing Custody Classification and security Designation, Chapter 7 covers provisions for application of "Public Safety Factors." In Appendix B, under "Code C Greatest Severity Offense," is listed the various offenses for which a public safety factor is required. The Plaintiff has never been sentenced for or even charged with any offense listed in Appendix B.

3

On February 28, 2005, the Plaintiff was attacked by another pri-
soner.  Purportedly, based upon that incident, BOP officials classi-
fied the Plaintiff as a "high" security inmate and transferred him
to U.S. Penitentiary ALlenwood.  Due to the false information of
Greatest Severity Public Safety Factor being maintained in the Plain-
tiff's record, the raising of his custody level placed him in the
"high" security category.

Although, the Plaintiff had discharged the firearms sentence on
April 3, 2003, in July 2006, BOP Case Manager McMahan informed the
Plaintiff that records showed he was classified as serving that sen-
tence three years after it had expired.  BOP employees had entered
information into the Plaintiff's Security Designation record not
only indicating that the firearms sentence was still being served,
but had also mischaracterized the possession conviction as a "conspi-
racy to obtain firearms with obliterated serial numbers."

In June 2005 and in August 2006, the Plaintiff made Freedom of
Information Act requests seeking disclosure of the records relied
upon in making adverse determinations to classify him as a high-sec-
urity, current-violence-felony-offender.

The Plaintiff made administrative remedy request, (BP-9), seek-
ing to correct the erroneous information.  It was acknowledged by
the USP Allenwood Warden's office as received on September 29, 2006.
On October 4, 2006, the Plaintiff was transferred to FCI McKean, a
"medium" security prison.  On October 25, 2006, the Plaintiff receiv-
ed in the mail, the BP-9 which he had filed at USP Allenwood.  There
was no response from the Warden, but instead, a copy of the BP-9

4

form was attached to the original BP-9.  This copy contained a note
written as if by the Plaintiff.  It was a purported claim to "with-
draw" the request, and with a forgery of the Plaintiff's signature.
The Plaintiff made Freedom of Information Act request for disclosure
of all documents related to the BP-9 and purported withdrawal.  The
BOP has failed/refused to respond or even acknowledge the FOIA re-
quest.

## LEGAL STANDARD

Summary judgment is appropriate when supporting materials, such
as affidavits and other documentation, show there are no material is-
sues of fact to be resolved and the moving party is entitled to judg-
ment as a matter of law. F.R.Civ.P. 56. Celotex Corp. v. Catrett,
477 U.S. 317 (1986).  The plain language of Rule 56(c) mandates the
entry of summary judgment against a party who fails to make a show-
ing sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of
proof at trial. F.R.Civ.P, Rule 56(c). Id.  Summary judgment may be
granted if, upon a review of the materials properly before the
court, and viewing the evidence thus considered in a light most
favorable to the non-moving party, the court is convinced that no
genuine issue of material fact remains for trial and that the movant
is entitled to judgment as a matter of law. Anderson v. Liberty Lob-
by, Inc., 477 U.S. 242 (1986).

To state a claim for money damages under the Privacy Act, a
plaintiff must assert that an agency failed to maintain accurate re-
cords, that it did so intentionally or willfully, and consequently,

5

that an adverse determination was made respecting the plaintiff. <u>Toolasprashad v. Bureau of Prisons</u>, 286 F.3d 576, 583 (D.C. Cir. 2002). The type of conduct required by the agency to be willful and intentional is either committing the act without grounds for believing it to be lawful, or flagrantly disregarding others' rights under the Act. <u>Albright v. United States</u>, 732 F.2d 181, 188 (D.C. Cir. 1984).

The Constitution imposes a duty to protect: to "take reasonable measures to guarantee the safety of inmates" and to protect them from "violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994) quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1990). When prison officials intentionally place prisoners in dangerous circumstance, or when they are deliberately indifferent to prisoners' safety, they violate the constitution. <u>Cortes-Quinones v. Jimenez-Nettleship</u>, 842 F.2d 556 (1st Cir. 1988). Placing a prisoner at substantial risk can arise from a single factor, e.g., being placed in a cell with a very dangerous inmate, or a combination of factors, e.g., inadequate monitoring by jailers, the ready availability of weapons, and inadequate classification policies. See <u>Marsh v. Butler County Ala.</u>, 268 F.3d 1014, 1029 (11th Cir. 2001). Also <u>Marchesani v. McCune</u>, 531 F.2d 459, 462 (10th Cir. 1976) (clear showing of abusive or capricious action in classifying prisoners may violate due process). An inmate's right to be protected from constant threat of violence from other inmates does not require that he wait until he is actually assaulted before obtaining relief. <u>Riley v. Jeffes</u>, 777 F.2d 143, 147 (3d Cir. 1985).

6

## DISCUSSION

The Plaintiff is entitled to judgment as a matter of law for reasons as are set forth below.

Bureau of Prisons (BOP) employees failed to maintain accurate records, did so intentionally or willfully, and consequently, adverse determinations were made respecting the Plaintiff. BOP employees persistently engaged in abusive or capricious actions in classifying the Plaintiff, as demonstrated by their repeated and willful introduction of false information to his record which violated due process. BOP employees subjected the Plaintiff to the constant threat of substantial risk of violence and harm by intentional or willful placement in dangerous circumstances using the custody and classification determinations based upon the false records which they maintained, which amounted to cruel and unusual punishment.

The Plaintiff was a "low" security prisoner with no history of violence. BOP employees determined that they wanted to preclude him from being placed in a low security prison. FCI Ray Brook officials falsely asserted that the Plaintiff was "required" to participate in their drug education program, and used that claim to "restrict" him to the lowest pay grade when his job performance warranted the highest pay-grade. The Plaintiff's sentence at that time was for firearms possession and there were no drugs involved in his case. When the Plaintiff declined to join the drug-program, BOP employees falsely asserted that he was "argumentative...as displayed by his difficulty communicating with staff," as justification for application of

7

a "Greater Security Management Variable," to preclude his placement in a "low" security facility. However, irrespective of these alleged facts, true or not, neither a requirement to participate in drug education, nor difficulty communicating, are within the proscribed inmate conduct cited in the BOP Program Statement governing classification and security designation as providing the basis for application of greater security supervision. Ray Brook officials also entered intentional false information to the Plaintiff's record that he had outstanding arrest warrants and open pending court cases. Both of these factors preclude a prisoner from being placed in a low security facility. BOP employees intentionally or willfully failed to maintain accurate records pertaining to the Plaintiff, and as a result, the adverse determination was made to continue his confinement at Ray Brook which was a dangerous and violent environment, and the Plaintiff was assaulted on two (2) separate occasions by younger, violent inmates.

The application of the Greater Security Management Variable to the Plaintiff's record was indefinite. When the transferred to FCI Allenwood, officials there maintained the Greater Security Management Variable without review. Although BOP employees at FCI Allenwood admitted to the Plaintiff that he was not required to participate in a drug program, they introduced new false data that he was a current-violence felony offender. BOP employees, Hattie Sims and Amy Foura, effected classification re-designation of the Plaintiff for the purpose of transferring him, with intent to transfer him out of the Northeast Region in retaliation for his filing of civil suit.

Plaintiff had arrived at FCI Allenwood classified as a "low-security" inmate (+6 points). Plaintiff had been classified as a low security inmate since 1999. However, due to the Greater Security Management Variable applied by Ray Brook officials, his placement in a medium security prison had continued.

After the Plaintiff filed a civil action in U.S District Court in June 2004, against officials at FCI Allenwood, BOP employees Sims and Foura began process, in January 2005, to transfer him. A new medium security facility, FCI Bennettsville in South Carolina, was scheduled to open in March 2005, and it was intended to transfer the Plaintiff there under guise of "populating a new prison." In order to raise the Plaintiff's custody level to "medium - security" and remove the Management Variable so that the Plaintiff would "meet the criteria" for transfer to a new facility, Sims and Foura entered false classification data asserting that the Plaintiff was a Public Safety risk of the Greatest Severity so as to increase his security level to +12 points "medium-security," without need of a management variable, and thereby, meeting the criteria for transfer. Sims and Foura also falsely asserted that Plaintiff requested the transfer. Sims and Foura knew or had reason to know that there were no set of facts which legitimately supported a basis for the application of a public safety factor to the Plaintiff's custody classification. The Plaintiff had been confined at FCI Allenwood for over two and a half years by January 2005. Prior to that time he had not been classified with the Public Safety Factor. In April 2003, the Plaintiff began a sentence for "mail fraud." He was not a public safety risk.

9

BOP employees entered the false public safety factor information for no other reason than to effect the Plaintiff's transfer out of the Region, which amounted to an adverse determination because the Plaintiff's home is in Connecticut.

The BOP employees made further use of false classification data entries to justify transferring the Plaintiff to USP Allenwood. In January 2005, BOP employees maintained security designation data indicating that the Plaintiff was still serving a sentence for firearms charges which he had, in fact, completed and discharged in April 2003. BOP employees further re-characterized the nature of the offense to justify a security level increase to +18 points in order to meet requirements for placement in a "high - security" penitentiary. In fact, when the Plaintiff had actually been serving the firearms possession sentence he had not been classified as "high-security," but was a "low-security" prisoner with only +6 points.

BOP employees' persistent falsification of classification data for the purpose of placing the Plaintiff in higher level security facilities than he should have been in placed him in constant substantial risk of harm.

In this case, the facts and evidence show that, Defendant Bureau of Prisons failed to maintain records with the degree of accuracy necessary to assure fairness in determinations affecting the Plaintiff. The facts and evidence show conclusively that, BOP employees acted intentionally or willfully in failing to maintain accurate records. The facts and evidence show that, the Plaintiff was injured and that the proximate cause of such injury was the BOP's reliance

upon its false, inaccurate records.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Plaintiff respect-fully requests the Court enter Order granting judgment in his favor and against the Defendant, Federal Bureau of Prisons.

Dated October 30, 2007

Respectfully Presented,

Kenneth Eugene Speight
c/o P.O. Box 8000
Bradford, Pennsylvania
[16701]

## PROOF OF SERVICE

I, Kenneth Eugene Speight, hereby attest and affirm that a true and correct copy of the foregoing Memorandum in Support of Motion for Summary Judgment was sent on October 30, 2007, by presenting to corrections officials at FCI McKean for processing to the U.S. Postal Service for mailing to:

Charlotte A. Abel, Esq.
Office of the U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

Kenneth Eugene Speight
c/o P.O. Box 8000
Bradford, Pennsylvania
[16701]

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KENNETH EUGENE SPEIGHT,
            Plaintiff,

    -vs-                              Civil Number 1:07-cv-208(RCL)

FEDERAL BUREAU OF PRISONS,
            Defendant.

## STATEMENT OF FACTS

The uncontroverted facts of this case are as follows:

1.    The Plaintiff is in federal custody currently imprisoned at Federal Corrections Institution (FCI) McKean, Bradford, Pennsylvania, serving a 72-month sentence for violation of 18 USC §§ 371, 372 and 1341 (mail fraud), which began on April 3, 2003.

2.    The Plaintiff initially entered Bureau of Prisons custody at FCI Ray Brook, New York, in February 1998, while serving a 105-month sentence for violation of 18 USC § 922(g) (possession of firearm by a felon), which sentence he discharged on April 3, 2003.

3.    BOP officials initially scored the Plaintiff's security classification as "medium" security based on the assertion that his [then] "current offense," (Feb. 1998), which was 18 USC § 922(g), warranted a "Public Safety Factor" of "GREATEST SEVERITY." Ex. A

4.    In March 1998, BOP employees entered classification data into the Plaintiff's Central File falsely claiming that drug abuse "may have" contributed to the firearms possession offense, and therefore, he was required to participate in an institution drug abuse program.

1

Ex. B

5.    In September 1999, the Plaintiff discovered that he had been classified with a security designation of "Greatest Severity Public Safety Factor." Ex. C

6.    BOP employee Michelle Picerno admitted to the Plaintiff that application of the Public Safety Factor had been improper and that his custody classification score had been in error. On October 1, 1999, Picerno removed the Public Safety Factor whereupon the Plaintiff's custody classification score was "low" security. Ex. D (MALE CUSTODY CLASSIFICATION FORM dated 10-01-1999).

7.    On October 28, 1999, Picerno made false representations in application for imposition of a "Greater Security Management Variable" so as to preclude the Plaintiff from being transferred to a low security institution. Picerno falsely claimed that the Plaintiff was required to take a drug program and that he was "argumentative" with staff. Ex. E (Memorandum Application for Greater Security Management Variable).

8.    The Plaintiff worked in Food Service in a priority job where he was rated an "asset to the Department," received high work performance reports, and there was no basis for the assertion that he had "difficulty communicating with staff." Ex. F (Work Performance Reports BP-324).

9.    The bases given by Picerno in her Memorandum seeking Greater Security Management Variable are not within the category or scope of inmate conduct warranting "greater security" as provided within the BOP regulation P.S. 5100.07. Ex. G (BOP Program Statement 5100.07, pp. 9

2

an 13).

10. From March 1998 through June 2002, officials at Ray Brook per-
sistently maintained the false assertion the Plaintiff had outstand-
ing warrants and pending charges, thus requiring a security designa-
tion which precluded his placement in a low-security facility. Ex. H
(Program Review Reports, September 29, 1998 and March 17, 1999).

11. In July 2002, the Plaintiff was transferred to FCI Allenwood.
Although, the Plaintiff's custody classification score was "low" se-
curity, the Greater Security Management Variable obtained by PIcerno
in 1999 had remained in effect. Greater Security Management Vari-
ables were applied indefinitely with no expiration date, and admini-
strative remedy challenge was futile due to no liberty interest in
classification determinations (Sandin v. Connor, 515 U.S. 472
(1995)). The Plaintiff only learned of the false statements by
Picerno in the application through FOIA disclosure received in August
2005.

12. At FCI Allewood, BOP employee Amy Foura removed the erroneous
"drug abuse education" requirement from the Plaintiff's classifica-
tion records. Foura subsequently entered false data that the Plain-
tiff was a "current violence" felony offender subject to notification
under 18 USC § 4042(b). Ex. I (Program Review Report, 02-04-2005 and
07-07-2006).

13. In June 2004, the Plaintiff initiated a civil action against
certain BOP officials at FCI Allenwood. BOP employees, Hattie Sims
and Amy Foura determined to transfer the Plaintiff to another prison
out of the Northeast Region.

3

14. In January 2005, Sims and Foura re-entered the Greatest Severity Public Safety Factor data into the Plaintiff's custody classification file which raised his custody-level to medium security without need for a "management variable." Ex. **J** (MALE CUSTODY CLASSIFICATION FORM, dated 01-01-2005).

15. In the BOP Program statement, Chapter 7 covers "Public Safety Factors." In Appendix B, under "Code C GREATEST SEVERITY OFFENSE," is listed the various offenses for which a Public Safety Factor is required. The Plaintiff has never been sentenced for or even charged with any offense listed Appendix B. Ex. **K**, (BOP Program Statement 5100.07, Chapter 7, pp. 1 and 5, and Appendix B, p. 1).

16. In January 2005, Foura and Sims made false representations in application to transfer the Plaintiff to FCI Bennetsville, South Carolina, alleging that he requested the transfer. Ex. **L** (REQUEST FOR TRANSFER Form 409, dated January 1, 2005).

17. On February 28, 2005, the Plaintiff was attacked by another prisoner. Purportedly, based upon that incident, BOP officials transferred the Plaintiff to U.S. Penitentiary Allenwood, classified as a "high" security inmate. Ex. **M**, ( MALE CUSTODY CLASSIFICATION FORM, dated 06-28-2005).

18. Due to the false information of Greatest Severity Public Safety Factor being maintained on the Plaintiff's record, the determination to raise his custody level placed him in the "high" security category.

19. The Plaintiff discharged the firearms sentence on April 3, 2003. However, in July 2006, BOP employee K. McMahan provided the Plaintiff

4

with a Security Designation Data form which showed that, the BOP con-
tinued to classify him as still serving that sentence three (3) years
after it had expired.  BOP employees also had mischaracterized the
possession conviction as a "conspiracy to obtain firearms with obli-
terated serial numbers." Ex. **N**, (SECURITY DESIGNATION DATA FORM).
20.  The Plaintiff made Freedom of Information Act requests in June
2005 and August 2006, seeking disclosure of the records relied upon
in making the adverse determinations to classify him as a high-secu-
rity, current-violence-felony-offender. Ex. **O** (Freedom of Informa-
tion Act Requests).
21.  The Plaintiff made administrative remedy request, BP-9, seeking
to correct the erroneous information.  It was acknowledged by the
Warden as received on September 29, 2006.  On October 4, 2006, the
Plaintiff was transferred to FCI McKean.  On October 25, 2006, at
FCI McKean, the Plaintiff received in the mail the administrative
remedy request BP-9 which he had filed at USP ALlenwood.  There was
no response from the WArden, but instead, a copy of the BP-9 form
which contained a note, written as if by the Plaintiff claiming to
"withdraw" the request, with a forgery of the Plaintiff's signature,
was attached to the original BP-9.  Ex. **P** (BP-9 dated 23 September
2006).
22.  The Plaintiff has made FOIA request for disclosure of all docu-
ments related to the BP-9 and purported withdrawal.  The BOP has fail-
ed/refused to respond of even acknowledge the FOIA request. Ex. **Q**,
(Freedom of Information Act Request, dated February 12, 2007).
23.  FCI Ray Brook was a "high - medium" security facility which

5

housed a significant number of violent prisoners, and the institution has a history of violent and fatal assaults comparable to some penitentiaries.

24. On July 18, 2000, the Plaintiff was assaulted at FCI Ray Brook by a younger prisoner who had a known history of violent and assaultive behavior.

25. On December 15, 2000, the Plaintiff was assaulted by a prisoner who had a history of violence, who was under chronic psycho-therapy and including psychotropic medication. FCI Ray Brook officials knew these facts, yet, Plaintiff was compelled to share a cell with said prisoner.

26. FCI Allenwood primarily housed immigrant and District of Columbia prisoners. The D.C. prison population has substantial percentage of violent and assaultive inmates.

27. On February 28, 2005, the Plaintiff was assaulted and seriously injured at FCI Allenwood by a District of Columbia prisoner whom the Plaintiff was compelled to share a cell with. The Plaintiff was forced to defend himself against the Prisoner who had a substantial history of violence including assault on police.

28. USP Allenwood was one of the highest "maximum - security" penitentiaries in the federal prison system. A substantial percentage of the prisoner population are serving life, and even, multiple life sentences, and many of whom are extremely violent.

29. During the 15 months between, June 2005 and October 2006, in which the Plaintiff was imprisoned at USP Allenwood, there were numerous incidents of violent assaults by inmates on other inmates,

6

several of which resulted in deaths.

30.  The Plaintiff had no prior history of violence or other factors which warranted "greater security."  The Defendant's employees' practice of making false data entries into the Plaintiff's record in order to justify keeping him in a medium security prison when he should have been in a low security facility, directly contributed to the Plaintiff's exposure to substantial risk of serious harm and consequent injury.  The defendant's employees' knowing and willful entry of false data with intent to artificially raise the Plaintiff's custody level to medium, directly contributed to his transfer to a high security prison, and consequent exposure to substantial risk of serious danger.

Dated: October 23, 2007

Respectfully Presented,

Kenneth Eugene Speight
c/o P.O. Box 8000
Bradford, Pennsylvania
                    [16701]

7

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

KENNETH EUGENE SPEIGHT,
            Plaintiff,

    -vs-                                    Civil Number 1:07-cv-208(RCL)

FEDERAL BUREAU OF PRISONS,
            Defendant.

### PROOF OF SERVICE

I, Kenneth Eugene Speight, attest and affirm that  a true and correct copy of the Motion For Summary Judgment, accompanying State- ment Of Facts, and Index of Exhibits, were sent via first class mail by presenting to corrections officials at FCI McKean for processing to the U.S. Postal Service, on October 29, 2007, to:

Charlotte A. Abel, Esq.
Office of the U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

Kenneth Eugene) Speight
c/o P.O. Box 8000
Bradford, Pennsylvania
                [16701]

UNITED STATE DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH EUGENE SPEIGHT,
             Plaintiff,

   -vs-                          Civil Number 1:07-cv-208(RCL)

FEDERAL BUREAU OF PRISONS,
             Defendant.

### EXHIBITS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
### INDEX OF EXHIBITS

**A** - CUSTODY CLASSIFICATION FORM  dated 09-23-98

**B** - Declaration of Kenneth Eugene Speight

**C** - CUSTODY CLASSIFICATION FORM  dated 09-23-1999

**D** - CUSTODY CLASSIFICATION FORM dated 10-01-1999

**E** - Application for Management Variable

**F** - Work Performance Reports, BP-324s

**G** - Program Statement 5100.07, Chapter 7, pp. 9 and 13

**H** - Program Review Report September 29, 1998 and March 17, 1999

**I** - Program Review Report 02-04-2005 and 07-07-2006

**J** - CUSTODY CLASSIFICATION FORM 01-01-2005

**K** - Program Statement 5100.07, Chapter 7, pp. 1 and 5, Appendix B

**L** - Application for Transfer BP-409

**M** - CUSTODY CLASSIFICATION FORM dated 06-28-2005

**N** - SECURITY DESIGNATION DATA FORM

**O** - Freedom of Information Act requests dated June 2005 and August 2006

**P** - ADMINISTRATIVE REMEDY REQUEST BP-9 dated 23 September 2006

**Q** - Freedom of Information Act request dated February 12, 2007

REGNO: 12471-014                    FORM DATE: 09-23-1998              ORG: RBK
(A) NAME....: SPEIGHT                KENNETH
SEN LIMT....: NONE                   MGMT VARIABLE..: NONE           *Ex. A*
PUB SAFETY..: GRT SVRTY                  MV EXPIRE:


(B) DETAINER: (0) NONE               SEVERITY.......: (7) GREATEST
LENGTH......: (1) 13-59 MOS  (MONTHS): 54
PRIOR.......: (3) SERIOUS            ESCAPES........: (1) > 10 YRS MINOR
VIOLENCE....: (0) NONE               PRECOMMT STATUS: (0) N/A


(C) TIME SERVED.....: (3) 0-25%      DRUG/ALC INVOLV: (2) PAST 5 YRS
MENT/PSYCH STABILITY: (4) FAVORABLE  TYPE DISCIP RPT: (3A) 1 MOD
FREQ DISCIP REPORT..: (2) 1          RESPONSIBILITY.: (2) AVERAGE
FAMILY/COMMUN TIES..: (4) GOOD


========================= LEVEL AND CUSTODY SUMMARY ========================
BASE SCORE   CUST SCORE   VARIANCE   SEC TOTAL   SEC LEVEL   CUSTODY   CONSIDER
   +12          +20          0          +12       MEDIUM       IN       SAME

(D) TYPE REVIEW    NEW CUSTODY    APPROVED: ___YES ___NO   NEXT REVIEW: MAR 98
     REGULAR        ___MAX
    EXCEPTION       ___IN     CHAIRPERSON SIGNATURE....: C Sullivan CHL
                    ___OUT    WARDEN/DESIGNEE SIGNATURE
                    ___COM        FOR EXCEPTION REVIEW: _____


REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:


COPY: CENTRAL FILE, SECTION TWO
      INMATE


G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

Ex. B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KENNETH EUGENE SPEIGHT,
          Plaintiff

    -vs-                                Civil Number 1:07-cv-208(RCL)

FEDERAL BUREAU OF PRISONS,
          Defendant.

## DECLARATION OF KENNETH EUGENE SPEIGHT

I, Kenneth Eugene Speight, hereby declare, attest and say:

1.    I am a federal prisoner currently incarcerated at Federal Cor-
rections Institution, McKean, Bradford, Pennsylvania.

2.    I am the plaintiff in the above captioned action, and competent
to state to the matters as set forth herein.

3.    I have been in the custody of the Federal Bureau of Prisons
since February 1998, and from that time, BOP officials engaged in a
continuing practice of deliberate entry of false information into
records pertaining to me for the purpose of manipulating classifica-
tion and custody determinations artificially or fraudulently so as
to keep me confined in the highest security facilities justifiable
by the false data.

4.    The practice of falsifying classification data was begun by of-
ficials at FCI Ray Brook, N.Y., and when I was transferred to FCI
Allenwood, PA, in 2002, Ray Brook officials communicated to Allen-
wood officials information intended to encourage the continuation
of adverse security and custody determinations directed against me.

1

5.    In March 1998, I was interviewed by a BOP employee of the FCI
Ray Brook psychology department, Dr. Gilbertson.  Dr. Gilbertson
stated that because records indicated that I had used marijuana in
the past, she wanted me to participate in her drug education pro-
gram.  I explained that, I am a Muslim, had been substance abuse
free for years, and due to my beliefs, I would not be interested in
such a class.  Dr. Gilbertson was dismissive if my religious convic-
tions and insisted that I was "required" to participate in her
class.  I reminded her that my offense had been possession of a
firearm and did not involve drugs.  Dr. Gilbertson stated that, as
far as she knew, I "may have been under the influence of drugs"
which "may have affected [my] judgment and decision" to possess the
firearm.  I then informed Dr. Gilbertson that I would not partici-
pate in her class and would interact with her again under any cir-
cumstance.

6.    From the above referenced encounter, Gilbertson ordered that I
be restricted to the lowest pay-grade.  I believe it is from that
encounter that, Michelle Picerno and Dave Salamy, were motivated in
their decisions to enter false data into records affecting my classi-
fication and custody.

7.    I had been classified a "low" security inmate since 1999, when
I discovered errors in my initial classification which were then cor-
rected, however, Michelle Picerno made false assertions that I was
required to take Gilbertson's drug program, and that I was "argumen-
tative" in order to obtain a "Greater Security Management Variable,"
which allowed incarcerating me in a medium-security prison although

2

I was a low-security prisoner.

8.    Throughout the time between my arrival at FCI Allewood in July 2002 and January 2005, Amy Foura maintained the "Greater Security Management Variable" which Picerno had placed in my records, although Foura admitted that I had not been required to participate in a drug program, and removed that requirement data from my classification records.

9.    Foura added new false information to support the basis for the purported need for "Greater Security."  Foura entered a false assertion that I was a "current violence felony offender" subject to 18 USC § 4042(b).

10.    After I filed a civil action in court against some FCI Allenwood officials, Foura and Hattie Sims began process to transfer me out of the prison and out of the Region to a new medium-security facility which was to be opened in March 2005, FCI Bennettsville, S.C.

11.    In January 2005, Sims conspired with Foura to input outdated erroneous security-designation data from 1998 regarding a firearms conviction sentence which I had discharged in April 2003, to apply a "Public Safety Factor" in order to raise my custody level to "medium" and eliminating the need for a management variable, and thereby, I would meet the criteria for transfer to "open" a new prison. Foura stated on the Transfer Application that I "requested" the trasfer.

12.    In February 2005, I became aware of the § 4042(b) "violence" entries to my file and requested that the erroneous information be corrected.  Foura failed for respond until I made a second request in March 2005, to which she responded that the information would be

3

corrected, however, Foura did not correct the false data.

13.  On June 13, 2005, I was transferred from FCI Allewood to USP
Allenwood, and there discovered the Public Safety Factor of Great-
est Severity, and that, my custody level had been raised to +18
"high - security," also the 4042(b) "current violence" classifica-
tion was still in the record.

14.  I made repeated inquiries of officials at USP Allenwood as to
why my custody level had increased from +6 low to +18 high security,
and on each occasion was told the matter would be looked into.

15.  In July 2006, Case Manager McMahan provided me with a Security
Designation Data Form showing that I was classified as still serv-
ing the firearms conviction sentence which I discharged in 2003. I
made an FOJA request in August 2006, which disclosed the erroneous
data and false information which had been placed in records pertain-
ing to by Picerno, Salamy, Foura and Sims over the years.

16.  On July 28 2006, I made request for informal resolution BP-8,
for correction of my classification records.  The request was re-
turned to me about two (2) weeks later, unsigned with an un-dated
note saying that I was correctly classified according to P.S. 5100.
07.

17.  I approached Unit Manager Troutman about the failure of staff
to properly respond and he directed me to re-file the request.  I
had to re-file the request on three (3) separate occasion before
USP Allenwood officials provided a non-responsive reply on September
19, 2006.

18.  I filed an administrative remedy request BP-9, and the USP

4

Allenwood administrative remedy coordinator sent me an acknowledgement receipt on September 29, 2006.

19.  On October 4, I was transferred out of USP Allewood, re-designated to FCI McKean.

20.  On October 25, 2006, I received the BP-9 filed at USP Allewood through regular mail.  There was no response from the Warden, but instead, a copy of the BP-9 form was attached to the original which contained a note, written as if by me, claiming to "withdraw" the request with a forgery of my signature.

21.  I did not "withdraw" the BP-9 administrative remedy request, I was never interviewed by any BOP official regarding the said request, and I did not sign the fraudulent note written on the copy of my BP-9 request for administrative remedy dated September 23, 2006, numbered 428661-F1.

I Kenneth Eugene Speight, hereby attest and affirm that the foregoing is true and correct to the best of my knowledge, understanding and belief, under penalty of perjury, 28 USC § 1746.

Kenneth Eugene Speight
c/o P.O. Box 8000
Bradford, Pennsylvania
                [16701]

5

*Ex. C*

```
RBKM9  607.00 *        CUSTODY CLASSIFICATION FORM        *        09-23-1999
PAGE 001 OF 001                                                   09:43:06
```

```
        REGNO: 12471-014          FORM DATE: 09-23-1999              ORG: RBK
(A) NAME....: SPEIGHT                 KENNETH
SEN LIMT...: NONE                 MGMT VARIABLE..: NONE
PUB SAFETY..: GRT SVRTY              MV EXPIRE:
```

```
(B) DETAINER: (0) NONE            SEVERITY.......: (7) GREATEST
LENGTH......: (1) 13-59 MOS  (MONTHS): 43
PRIOR.......: (3) SERIOUS         ESCAPES........: (1) > 10 YRS MINOR
VIOLENCE....: (0) NONE            PRECOMMT STATUS: (0) N/A
```

```
(C) TIME SERVED.....: (4) 26-75%     DRUG/ALC INVOLV: (2) PAST 5 YRS
MENT/PSYCH STABILITY: (4) FAVORABLE   TYPE DISCIP RPT: (3A) 1 MOD
FREQ DISCIP REPORT..: (2) 1           RESPONSIBILITY.: (0) POOR
FAMILY/COMMUN TIES..: (4) GOOD
```

```
========================= LEVEL AND CUSTODY SUMMARY =========================
BASE SCORE   CUST SCORE   VARIANCE   SEC TOTAL   SEC LEVEL   CUSTODY   CONSIDER
   +12          +19         +1         +13        MEDIUM       IN      INCREASE
```

```
(D) TYPE REVIEW    NEW CUSTODY    APPROVED:____YES __NO   NEXT REVIEW: March 2000
    REGULAR          MAX
    EXCEPTION        IN      CHAIRPERSON SIGNATURE....: D. Delany  Act for Wm
                     OUT     WARDEN/DESIGNEE SIGNATURE
                     COM        FOR EXCEPTION REVIEW: _____
```

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:

*Behavior does not warrant an increase to "MAX" custody @ this time.*

```
COPY: CENTRAL FILE, SECTION TWO
      INMATE
```

```
G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

(A) REG NO..: 12471-014                    FORM DATE: 10-01-1999      ORG: RBK
    NAME....: SPEIGHT, KENNETH
    SEN LIMT: NONE                         MGMT VARIABLE..: NONE       **Ex.D**
    PUB SFTY: NONE                         MV EXPIRE DATE.:

(B) DETAINER: (0) NONE                     SEVERITY.......: (3) MODERATE
    LENGTH..: (1) 13-59 MOS (MOS): 43      PRIOR..........: (3) SERIOUS
    ESCAPES.: (1) > 10 YRS MINOR           VIOLENCE.......: (0) NONE
    PRECOMMT: (0) N/A

(C) TIME SERVED.....: (4) 26-75%           DRUG/ALC INVOLV: (2) PAST 5 YRS
    MENTAL STABILITY: (4) FAVORABLE        TYPE DISCIP RPT: (3A) 1 MOD
    FREQ DISCIP RPT.: (2) 1                RESPONSIBILITY.: (0) POOR
    FAMILY/COMMUN...: (4) GOOD

                      --- LEVEL AND CUSTODY SUMMARY ---
        BASE SCORE   CUST SCORE   VARIANCE   SEC TOTAL   SEC   LEVEL   CUSTODY   CONSIDER
          +8           +19          +1         +9        LOW    IN               INCREASE

    G5149       INMATE/FACILITY LEVEL MISMATCHED, HAVE REGION ADD A MGMT VARIABLE
    G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

Mr. Speight -

   Per our discussion, I have removed the Greatest
Severity Public Safety factor in your case, in
correlation with the reduction of your Instant
Offense rating from Greatest to Moderate. I
am still unable to recommend transfer to
a low based on the fact you have not maintained
clear conduct for a minimum of 18 months.
I will be referring your case to the Northeast Regional
Office, through the Warden, in accordance with Policy,
and will be requesting you remain @ Ray Brook and
the Greater Security Management Variable be applied.

**UNITED STATES GOVER**. . **fENT MEMORANDUM**
**FCI RAY BROOK, NEW YORK**

*Ex. E*

Date: October 28, 1999

Reply To
Attn Of: John Nash, Warden

SUBJECT: SPEIGHT, Kenneth
Reg. No. 12471-014

To: David M. Rardin,
Regional Director, NERO

Attn: Tony Prantow, Regional Designator

**Apply Management Variable:** Greater Security (V).

**Rationale for Referral:** Inmate Speight is a Low security level/IN custody inmate. He indicates he will return to Connecticut to reside near his family when he is released from confinement. He is serving a 105 month term of incarceration with 3 years Supervised Release for Felon in Possession of a Firearm and Possession of a Firearm with an Obliterated Serial Number. He has a projected Good Conduct Time release date of April 3, 2003. He arrived at FCI Ray Brook on February 12, 1998, to begin service of his sentence. Since his arrival to this facility, inmate Speight has participated in minimal programming, and has received two minor misconduct reports. His most recent misconduct report occurred on June 2, 1999, when he was found guilty of Being in an Unauthorized Area (code 316). Additionally, inmate Speight has proven to be an argumentative inmate, as displayed in his difficulty communicating with staff. Furthermore, inmate Speight is currently refusing to participate in the Basic Drug Education Program, which is required in his case. Based on his recent misconduct, his negative demeanor, and his failure to participate in mandatory programming, the Unit Team recommends he remain at this facility and the Greater Security (V) Management Variable be applied.

**BP-337 vs. BP-338:** Inmate Speight is currently incarcerated for the charges of Felon in Possession of a Firearm and Possession of a Firearm With an Obliterated Serial Number. The offense conduct regarding this crime does not reflect any distribution, exporting, brandishing, or threatening use of any automatic weapons or sophisticated weaponry. His crime is described as mere possession. Therefore, the severity level of inmate Speight's instant offense has been lowered from Greatest to Moderate, and the Greatest Severity Public Safety Factor has been removed accordingly. Due to the passage of time, only 41 months remain to be served for this period of incarceration.

**Prepared By:** Michele Picerno, Case Manager

STAFF HAVE CHECKED THE FOLLOWING SENTRY PROGRAMS TO ENSURE THEY ARE CORRECT AND CURRENT:
- CMC Clearance And Separatee Data
- Inmate Load Data
- Inmate Profile
- Custody Classification Form
- Sentence Computation
- Chronological Disciplinary Record

ExF (1)

# U.S. DEPARTMENT OF JUSTICE
## Federal Bureau of Prisons

## WORK PERFORMANCE RATING

Inmate's Name _____ Register No. _____ Unit _____

Evaluation Period: _____

*To Dept. Head for Review, Then to Unit Team*

Work Assignment _____

Bonus Justification: _____

Dept. Head Approval: _____

CIRCLE THE BEST STATEMENT IN EACH AREA. BASE YOUR RATINGS ON THE INMATE'S OVERALL PERFORMANCE FOR THIS RATING PERIOD—NEITHER THE INMATE'S BEST DAY NOR WORST DAY—AS COMPARED TO WHAT IS EXPECTED OF A SATISFACTORY WORKER IN THE ASSIGNMENT.

**A QUALITY OF WORK**
1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2. Fair. Careless; makes mistakes and does not check work. Should do better work.
3. Satisfactory. Makes some mistakes but no more than expected at this level.
4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
5. Outstanding. Does superior work.

**B QUALITY OF WORK**
1. Unsatisfactory. Always wastes time, goofs off.
2. Fair. Does just enough to get by. Has to be prodded occasionally.
3. Satisfactory. Works steadily; but does not push self.
4. Good. A willing worker. Does a full day's work and wastes little time.
5. Outstanding. Drives self exceptionally hard all the time.

**C INITIATIVE**
1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2. Fair. Usually relies on others to say what needs to be done.
3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4. Good. Can plan own work. Acts on own in most things.
5. Outstanding. Has good ideas on better ways of doing things.

**D INTEREST; EAGERNESS TO LEARN**
1. Unsatisfactory. Shows no interest in job. Regards job as a drag or waste of time.
2. Fair. Shows minimal interest but not very eager to learn.
3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E ABILITY TO LEARN**
1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
2. Fair. Slow but if tries eventually will pick up the skills. Needs more instruction than most.
3. Average. No slower and no faster to learn than most inmates. Requires normal amount of instruction.
4. Good. Learns rapidly. Good memory. Rarely makes the same mistake.
5. Outstanding. Very quick to learn. Excellent memory. In learning job much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
1. Needs constant supervision. If left unsupervised will fool up, get in trouble, or wander off. Undependable.
2. Needs close supervision than most. Not very dependable.
3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
4. Needs little supervision. Good record of dependability and promptness.
5. No supervision required. Completely dependable in all things.

**G RESPONSE TO SUPERVISION AND INSTRUCTION**
1. Poor. Resentful and hostile. May argue with supervisor.
2. Fair. Resists or ignores suggestions.
3. Satisfactory. Generally does what is told without any fuss.
4. Good. No hostility or resentment. Tries to improve.
5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H ABILITY TO WORK WITH OTHERS**
1. Poor. Negativistic, hostile, annoying to others.
2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
4. Good. Friendly, congenial, helpful; others like to work with.
5. Outstanding. Gets along well with everyone. Very popular.

**I OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, (if this inmate was an employee of yours in the community would you:
1. Fire or lay off that individual?
2. Transfer the person to a less demanding job at a lower pay scale?
3. Continue to employ the person but without a raise or promotion this time?
4. Raise the person's pay but keep the person at the same job?
5. Promote the person to a more demanding job at a higher pay rate?

**J GRADES AND PAY**
1. Performance Pay - Grade Class (Circle one) 1 – 2 – 3 – 4 M.
2. Hours of Satisfactory work _____
3. Regular Pay _____
4. Bonus Recommended _____
5. Total Pay _____

_____ Inmate _____ was requested to sign this rating form, but refused, citing the following reason:

_____ (Supervisor's Signature) _____ Date

_____ (Staff Witness Signature) _____ Date

BP-324(52)
OCTOBER 1984

Previously BP-S-182

USP-LVN

Ex. F (2)

# WORK PERFORMANCE RATING

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

Inmate's Name _Spragt_  Register No. _12341_ Unit _014_ Unit _Cedar_

Evaluation Period _9/16 – 9/16/94_

To Dept. Head for Review, Then to Unit Team

CIRCLE THE BEST STATEMENT IN EACH AREA. BASE YOUR RATINGS ON THE INMATE'S OVERALL PERFORMANCE FOR THIS RATING PERIOD—NEITHER THE INMATE'S BEST DAY NOR WORST DAY—AS COMPARED TO WHAT IS EXPECTED OF A SATISFACTORY WORKER IN THE ASSIGNMENT.

**A QUALITY OF WORK**
1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2. Fair. Careless; makes mistakes and does not check work. Should do better work.
3. Satisfactory. Makes some mistakes but no more than expected at this level.
4. Good. Makes fewer mistakes than most inmates at this level of training. Does superior work.
5. Outstanding. Does superior work.

**B QUALITY OF WORK**
1. Unsatisfactory. Lazy, wastes time, goofs off.
2. Fair. Does just enough to get by. Has to be prodded occasionally.
3. Satisfactory. Works steadily. Has some interpersonal difficulties.
4. Good. Willing worker. Does a full day's work and wastes little time.
5. Outstanding. Drives self exceptionally hard all the time.

**C INITIATIVE**
1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2. Fair. Usually relies on others to say what needs to be done.
3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4. Good. Goes ahead on own with work. Acts on own in most things.
5. Outstanding. Doesn't wait to be told what to do. Has good ideas on better ways of doing things.

**D INTEREST; EAGERNESS TO LEARN**
1. Poor. Shows no interest in job. Regards job as a drag or waste.
2. Fair. Shows minimal interest but not very eager to learn.
3. Satisfactory. Shows average amount of interest. Wants to learn.
4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E ABILITY TO LEARN**
1. Unsatisfactory. Very slow to learn.
2. Fair. Has very little aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
5. Outstanding. Very quick to learn. Excellent memory. Is learning job much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
2. Needs closer supervision than most. Not very dependable.
3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
4. Needs little supervision. Good record of dependability and promptness.
5. No supervision required. Completely dependable in all things.

**G RESPONSE TO SUPERVISION AND INSTRUCTION**
1. Poor. Resentful and hostile. May argue with supervisor.
2. Fair. Resists or ignores suggestions.
3. Satisfactory. Generally does what is told without any fuss.
4. Good. No hostility or resentment. Tries to improve.
5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H ABILITY TO WORK WITH OTHERS**
1. Poor. Negativistic, hostile, annoying to others.
2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
4. Good. Friendly, congenial, helpful; others like to work with.
5. Outstanding. Gets along well with everyone. Very popular.

**I OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, I of those who were supervised, if any of those in the community would you:
1. Fire or lay off that individual?
2. Transfer the person to a less demanding job at a lower pay scale?
3. Continue to employ the person but without a raise or promotion this job?
4. Raise the person's pay but keep the person at the same job?
5. Promote the person to a more demanding job at a higher pay rate?

**J GRADES AND PAY**
1. Performance Pay – Grade Class (Circle one) 1 – 2 – 3 – 4 – M.
2. Hours of Satisfactory work _____
3. Regular Pay _____ 9.00
4. Bonus Recommended _____ $27.00
5. Top Pay

Inmate _____ was requested to sign this rating form, but refused, citing the following reason:

Work Assignment _Cook (Cellh)_
Bonus Justification _Excellent Work_

Dept. Head Approval: _____

(Staff Witness Signature) _____ Date _4/20/94_

_____ (Supervisor's Signature) _____
_____ (Unit Manager's Signature) _____

BP-324(52)
OCTOBER 1984
USP-LVN

Ex. F (3)

# WORK PERFORMANCE RATING

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

Work Assignment: *FOOD KITCHEN*
Bonus Justification:
Dept. Head Approval:

Inmate's Name: *SPEIGHT, KENNEDY*    *Excellent Worker*
Register No. *12971-014*  Unit: *AA*
Evaluation Period: *OCT. 21 TO NOV 20, 2002*

To Dept. Head for Review, Then to Unit Team

> CIRCLE THE BEST STATEMENT IN EACH AREA. BASE YOUR RATINGS ON THE INMATE'S OVERALL PERFORMANCE FOR THIS RATING PERIOD—NEITHER THE INMATE'S BEST DAY NOR WORST DAY—AS COMPARED TO WHAT IS EXPECTED OF A SATISFACTORY WORKER IN THE ASSIGNMENT.

**A. QUALITY OF WORK**
1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2. Fair. Careless; makes mistakes and does not check work. Should do better work.
3. Satisfactory. Makes some mistakes but no more than expected at this level.
4. Good. Makes fewer mistakes than most inmates at this level of training. Does fourteen-man level work.
5. Outstanding. Does superior work.

**B. QUANTITY OF WORK**
1. Unsatisfactory. Lazy, wastes time, goofs off.
2. Fair. Does just enough to get by. Has to be prodded occasionally by them.
3. Satisfactory. Works steadily but does not push self.
4. Good. Willing worker. Does a full day's work and wastes little time.
5. Outstanding. Gets self exceptionally hard all the time.

**C. INITIATIVE**
1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2. Fair. Usually relies on others to say what needs to be done.
3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4. Good. Doesn't wait to be told what to do.
5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
2. Fair. Shows minimal interest but not very eager to learn.
3. Satisfactory. Shows average amount of interest. Wants to learn.
4. Good. Above-average interest in job. Asks questions about own work. May do extra work to improve skills.
5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
2. Fair. Slow but if tried eventually will pick up the skills. Needs more time to learn than most.
3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
5. Outstanding. Very quick to learn. Excellent memory. Is learning job much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
1. Needs constant supervision. If left unsupervised will foul up, goof off, or wander off. Undependable.
2. Needs closer supervision than most. Not very dependable.
3. Average. Can be relied on for certain things but must be supervised for others. Usually prompt and dependable.
4. Good. No need for supervision. Prompt and dependable.
5. Outstanding. Completely dependable in all things. No supervision required.

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
1. Poor. Resentful and hostile. May argue with supervisor.
2. Fair. Resents or ignores suggestions.
3. Satisfactory. Generally does what is told without any fuss.
4. Good. No hostility or resentment. Tries to improve.
5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
1. Poor. Negativistic, hostile, annoying to others.
2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
4. Good. Friendly, congenial, helpful; others like to work with.
5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would:
1. Fire or lay off that individual?
2. Transfer the person to a less demanding job at a lower pay rate?
3. Continue to employ the person but without a raise or promotion this time?
4. Raise this person's pay for keeping the person at the same job?
5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
1. Performance Pay – Grade Class (Circle one) 1 - 2 - 3 - 4
2. Hours of Satisfactory work
3. Bonus Recommended?
4. Total Pay

Supervisor's Signature

Staff Witness Signature

Inmate _____ was requested to sign this rating form, but refused, citing the following reason:

Previously BP-S-162

BP-S-162
OCTOBER
(over)

**WORK PERFORMANCE RATING**

Work Assignment: FS MIDNIGHT BAKERS
Bonus Justification: Lefly Head Working Cook who Baking a Quality Meal is Produced

Inmate's Name: SPEIGHT    AA
Register No. 12971-014  Unit: AA
Evaluation Period: OCT. 21 TO NOV 20, 2002

To Dept. Head for Review, Then to Unit Team

CIRCLE THE BEST STATEMENT IN EACH AREA. BASE YOUR RATINGS ON THE INMATE'S OVERALL PERFORMANCE FOR THIS RATING PERIOD—NEITHER THE INMATE'S BEST DAY NOR WORST DAY—AS COMPARED TO WHAT IS EXPECTED OF A SATISFACTORY WORKER IN THE ASSIGNMENT.

A. QUALITY OF WORK
1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2. Fair. Careless; makes mistakes and does not check work. Should do better work.
3. Satisfactory. Makes some mistakes but no more than expected at this level.
4. Good. Makes fewer mistakes than most inmates at this level of training. Does fourteen-man level work.
5. Outstanding. Does superior work.

B. QUANTITY OF WORK
1. Unsatisfactory. Lazy, wastes time, goofs off.
2. Fair. Does just enough to get by. Has to be prodded occasionally by them.
3. Satisfactory. Works steadily but does not push self.
4. Good. Willing worker. Does a full day's work and wastes little time.
5. Outstanding. Gets self exceptionally hard all the time.

C. INITIATIVE
1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2. Fair. Usually relies on others to say what needs to be done.
3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4. Good. Doesn't wait to be told what to do.
5. Outstanding. Has good ideas on better ways of doing things.

D. INTEREST; EAGERNESS TO LEARN
1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
2. Fair. Shows minimal interest but not very eager to learn.
3. Satisfactory. Shows average amount of interest. Wants to learn.
4. Good. Above-average interest in job. Asks questions about own work. May do extra work to improve skills.
5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

E. ABILITY TO LEARN
1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
2. Fair. Slow but if tried eventually will pick up the skills. Needs more time to learn than most.
3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
5. Outstanding. Very quick to learn. Excellent memory. Is learning job much more rapidly than most inmates assigned here. Never makes the same mistake twice.

F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT
G. RESPONSE TO SUPERVISION AND INSTRUCTION
H. ABILITY TO WORK WITH OTHERS
I. OVERALL JOB PROFICIENCY
J. GRADES AND PAY
1. Performance Pay – Grade Class (Circle one)
2. Hours of Satisfactory work
3. Bonus Recommended?
4. Total Pay

Supervisor's Signature
Staff Witness Signature

Inmate _____ was requested to sign this rating form, but refused, citing the following reason:

BP-S-162
OCTOBER
(over)



Ex. G

## MANAGEMENT VARIABLES

Management Variables are applied to reflect and support the professional judgment of Bureau staff in order to ensure placement in the most appropriate security level institution. They are required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level. Application of a Management Variable requires review and approval by the Regional Director or designee. When completing the BP-338, institution staff may only enter a Management Variable which the Designator previously approved and entered as a management reason. Otherwise, the Designator or designee is the only person authorized to enter a variable. A maximum of three Management Variables may be entered for each case.

Note: SENTRY will not permit the simultaneous application of the Greater Security and Lesser Security MGTVs.

When a Management Variable no longer applies, institution staff are to remove the variable(s) accordingly. When no Management Variable is required, institution staff are to insert the letter "A" (NONE) in the space to signify that no MGTV will apply. Management Variables entered at initial designation are automatically transferred onto the BP-338, Custody Classification form.

Request for Management Variable/Management Variable expiration date is the Management Variable Expiration Date (MVED) must be submitted to the appropriate Designator via GroupWise using form EMS 409. (Individual Regional Offices may request additional information.) Requests for Management Variable via GroupWise for inmates are to be forwarded to the Inmate Monitoring Section in the Central Office. The following criteria are to be used:

a. Only Regional, CCM, or Central Office staff can apply a MGTV and update a MVED, with the exception of "I" (Med/Psych), which are to be applied and reviewed by the Central Office Medical Designator and "U" (Mariel Cuban Detainee), which are to be applied by the Community Corrections and Detention Division, Central Office.

b. When requesting a MGTV or an updated MVED, only section 4 needs to be addressed on the GroupWise form EMS 409. * This request should normally be made to the appropriate Designator within 15 calendar days following the inmate's scheduled program review to ensure the Designator is receiving a current Custody Classification Form, BP-338. After approval by the Warden, the

CODE    DESCRIPTION - MGTV

least one level less than the scored security level which is based on the Security Total and Public Safety Factor(s).

D    MARIEL CUBAN DETAINEE. Mariel Cuban Detainees are given no initial custody and security level. However, Custody Classification Forms are not completed on Mariel Detainees due to the unavailability of certain data at designation (i.e., current term of confinement, length of time remaining to serve, accurate criminal history). Therefore, transfers for a positive or negative behavior may cause placement of a Mariel Detainee in a facility different from his or her initial security or custody level.

This Management Variable shall be applied by the Community Corrections and Detention Division, Central Office.

Mariel Cuban Detainees whose security or custody level does not match that their facility will have this Management Variable applied. Sentenced Mariel Cuban inmates will only have this Management Variable added if they are ordered detained upon expiration of their federal sentences and their security or custody level does not match that of their facility.

A    GREATER SECURITY. There may be security concerns which are not adequately reflected in the classification scheme. In circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, escape risk but no DHO finding, etc.), than their assigned security level, may be placed in an institution outside normal guidelines, and this Management Variable shall apply. When this MGTV is applied based on institutional behavior which is not supported by a UDC/DHO finding of guilt, staff shall ensure compliance with the criteria as set forth in the Program Statement on Inmate Discipline and Special Housing Units. Application of this MGTV mandates the Regional Director or designee to determine the most appropriate level of security required by the inmate and apply a Management Security Level (MSL). Designation shall then be made to a current DFCL commensurate with the inmate's Management Security Level. The MSL

**U.S. Department of Justice**                                    **Federal Bureau of Prisons**

**Institution:** FCI Ray Brook, New York                         **Date:** Septemnber 29, 1998
**Inmate Name:** SPEIGHT, Kenneth                                      **Reg. No.:** 12471-014
**Program Review**                                                **Inmate Present:** Yes
**Sec./Cus. Level:** Medium Level/ IN Custody ( 12 points)   **Proj. Rel. Date/Method:** April 15, 2003 via GCT
***you decreased 4 points due to the "length of time remaining to serve" category changing**
**Qtrs. Assignment/Sanitation:** Genesee Unit / Room #
**Work Assignment/Performance:** Kitchen AM ~ Good                    E X . H (1)
**Institutional Adjustment/Conduct:** One 300 level incident report since his arrival in 2/98.
**Physical/Mental Health/DAP:** Regular Housing and Work Assignments with No restrictions
**Educational/Vocational Goals:** High School - has
**Religious/Leisure Activities:** Muslim
**Release Preparation Program:** Sentenced in **District of Connecticut**
                                        Returning to **Connecticut**
**Release Gratuities are minimal. Recommend you save your earnings for release funds.**
**Group Program Participation:** Recommended
**CIM Case:** NO            **Status Reviewed & Current: Yes**       **Notification Date:** N/A
**FRP Plan and Payment Schedule:** $100.00 SA & $7500.00 Restitution (due on Sup. Rel.)   **Balance: Paid in Full**
**SENTRY Data Current: Yes/No (If No Explain):**
**Drug Assignment:** Required (Use may have contributed to current offense) Declined (4/15/98)
**Parole Activity:** Not Eligible
**Detainers/Pending Charges:** Outstanding warrant (Forgery) - Hartford, CT
**GCT/EGT Status:** 162/411     **Jail Credit:** 857 days              **SGT Restoration Date:** N/A
**Inmate Request(s): Transfer/CCC Release/Furlough/Other(CircleOne,explain):**_____

---

**Unit Team Comments:** Paid FRP as requested, provided proof of High School Diploma.  However, There has been no program involvement, and has chose to not participate in the DAP course which to date has been deemed as REQUIRED.

---

|                | Program Recommended                          | Date Beginning  | Date Ending |
|----------------|----------------------------------------------|-----------------|-------------|
| **EDUCATION**  | Consider Life Skills/VT/PSE - one program    | 12/98           | 9/99        |
| **FRP**        | FRP                                          | complt.         | 9-15-98     |
| **COUNSELING** | DAP (Required) - be on waiting list by       | ASAP            |             |
| **LEISURE**    | Recreational and/or Religious Activities of choice | Continual until | Release     |
| **PRE-RELEASE**| Unit & Institution                           | NLT 4/2001      | 4/2003      |

**CCC Placement:** Consider at program review scheduled to occur 13 to 11 months prior to release.
**Recommended Days**_____ **Recommended Date**_____**Denial**

**Offender is NOT subject to notification under Public Law 103-322 Violent Crime Control Act & Law Enforcement Act Of 1994.  None of the following apply -** Current drug trafficking crime, Current crime of violence, prior federal drug trafficking crime, prior crime(s) of violence

**Date of Next Review:** March 1998                      **Next Custody Review Date: March  1998**

**Signatures:** Christine Sullivan-Unit Manager _____**Date:**_____
**Inmate:** X _Kenneth Speight_ _____**Date:** _____

**U.S. Department of Justice**                                      **Federal Bureau of Prisons**

**Institution:** FCI Ray Brook, New York                              **Date:** March 17, 1999
**Inmate Name:** SPEIGHT, Kenneth                                     **Reg. No.:** 12471-014
**Program Review**                                                    **Inmate Present:** Yes
**Sec./Cus. Level:** Medium Level/ IN Custody ( 12 points)      **Proj. Rel. Date/Method:** April 15, 2003 via GCT
**Qtrs. Assignment/Sanitation:** Genesee Unit / Room # 245U - _Fair to Poor - agrees to clean + pickup room._
**Work Assignment/Performance:** Kitchen AM — _Average_
**Institutional Adjustment/Conduct:** One 300 level incident report since his arrival in 2/98.
**Physical/Mental Health/DAP:** Regular Housing and Work Assignments with No restrictions
**Educational/Vocational Goals:** High School - has                  _Ex. H (2)_
**Religious/Leisure Activities:** Muslim
**Release Preparation Program:** Sentenced in **District of Connecticut**
                                          Returning to **Connecticut**
Release Gratuities are minimal. Recommend you save your earnings for release funds.
**Group Program Participation:** Recommended
**CIM Case:** NO                      **Status Reviewed & Current:** Yes        **Notification Date:** N/A
**FRP Plan and Payment Schedule:** $100.00 SA & $7500.00 Restitution (due on Sup. Rel.)    **Balance:** Paid in Full
**SENTRY Data Current:** Yes/No (If No Explain):
**Drug Assignment:** Required (Use may have contributed to current offense) Declined (4/15/98)
**Parole Activity:** Not Eligible
**Detainers/Pending Charges:** Outstanding warrant (Forgery) - Hartford, CT
**GCT/EGT Status:** 162/411          **Jail Credit:** 857 days          **SGT Restoration Date:** N/A
**Inmate Request(s):** Transfer/CCC Release/Furlough/Other(CircleOne,explain): _No Questions_

**Unit Team Comments:** There has been no program involvement, and you have chosen not to participate in the DAP course which to date has been deemed as REQUIRED. For these reasons your responsibility is rated as Poor.
_Advised to set up appointment with records office to discuss pending charge._

| | Program Recommended | Date Beginning | Date Ending |
|---|---|---|---|
| **EDUCATION** | Consider Life Skills/VT/PSE - one program | 9/99 | 3/00 |
| **FRP** | FRP | complt. | 9-15-98 |
| **COUNSELING** | DAP (Required) - be on waiting list by | ASAP | |
| **LEISURE** | One Recreational and/or Religious Activity | weekly until | 4/2003 |
| **PRE-RELEASE** | Unit & Institution | NLT 4/2001 | 4/2003 |

**CCC Placement:** Consider at program review scheduled to occur 13 to 11 months prior to release.
**Recommended Days_____  Recommended Date_____Denial**

**Offender is NOT subject to notification under Public Law 103-322 Violent Crime Control Act & Law Enforcement Act Of 1994. None of the following apply** - Current drug trafficking crime, Current crime of violence, prior federal drug trafficking crime, prior crime(s) of violence

Date of Next Review: Sept 1999                          Next Custody Review Date: Sept 1999

Signatures: Christine Sullivan, Unit Manager          Date: 3/17/99

Inmate: _Kenneth Speight_          Date: 3/17/99
_WITHOUT PREJUDICE_
_UCC 1-207_

Ex. I (1)

```
ALMBH           *       .   PROGRAM REVIEW REPORT        *       02-04-2005
PAGE 001                                                         15:38:40
```

INSTITUTION: ALM  ALLENWOOD MED FCI

NAME.......: SPEIGHT, KENNETH                    REG. NO: 12471-014
RESIDENCE..: BLOOMFIELD, CT 06002

TYPE OF REVIEW......: ~~INITIAL CLASSIFICATION~~/PROGRAM REVIEW
NEXT REVIEW DATE....:  _____ 8/05 _____

PROJ. RELEASE DATE..: 07-17-2008          RELEASE METHOD.: GCT REL
PAROLE HEARING DATE.: NONE                HEARING TYPE...: NONE

DATE OF NEXT CUSTODY REVIEW:  _1/06_____   DETAINERS (Y/N): N

CIM STATUS (Y/N)....: Y          IF YES, RECONCILED (Y/N): _N_

PENDING CHARGES.....: _None_____

OFFENDER IS SUBJECT TO NOTIFICATION UNDER 18 U.S.C. 4042(B)  (Y/N)....: _N_
    IF YES - CIRCLE ONE - DRUG TRAFFICKING/CURRENT VIOLENCE/PAST VIOLENCE

| CATEGORY | - - - - - | CURRENT ASSIGNMENT - - - - - - - | EFF DATE | TIME |
|---|---|---|---|---|
| CMA | IHP PART | INS INST HRNG PGM PARTICIPANT | 06-06-2003 | 0802 |
| CMA | PROG RPT | NEXT PROGRESS REPORT DUE DATE | 07-24-2005 | 1335 |
| CMA | RPP NEEDS | RELEASE PREP PGM NEEDS | 06-24-2006 | 1437 |
| CMA | V94 COA913 | V94 CURR OTHER ON/AFTER 91394 . | 03-06-1998 | 1403 |
| CUS | IN | IN CUSTODY | 01-30-1998 | 1149 |
| DRG | DRG I NONE | NO DRUG INTERVIEW REQUIRED | 10-27-2002 | 0706 |
| DST | BEN | BENNETTSVILLE FCI | 01-06-2005 | 1332 |
| EDI | ESL HAS | ENGLISH PROFICIENT | 02-12-1998 | 0001 |
| EDI | GED HAS | COMPLETED GED OR HS DIPLOMA | 06-22-1998 | 0001 |
| FRP | REFUSE | FINANC RESP-REFUSES | 12-11-2003 | 0926 |
| LEV | MEDIUM | SECURITY CLASSIFICATION MEDIUM | 02-27-2003 | 1032 |
| MDS | REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 06-20-2002 | 0956 |
| MDS | YES F/S | CLEARED FOR FOOD SERVICE | 05-30-2003 | 1235 |
| QTR | A03-205U | HOUSE A/RANGE 03/BED 205U | 10-26-2004 | 2021 |
| RLG | MUSLIM | MUSLIM | 03-11-1998 | 1351 |
| WRK | RECREATIN | RECREATION | 07-06-2004 | 0001 |

WORK PERFORMANCE RATING: _Good in Recreation_____

INCIDENT REPORTS SINCE LAST PROGRAM REVIEW: _____
_____ none since 6/04 _____

FRP PLAN/PROGRESS: _Inmate currently in Refuse Status. Pays 25.00
each qu. Owes 500 + 25000 + 7500.00_

RELEASE PREPARATION PARTICIPATION: _Inmate needs RPP 30 months
prior to release _____

Ex. I (2)

```
INSTITUTION: ALP  ALLENWOOD USP
NAME.......: SPEIGHT, KENNETH                    REG. NO: 12471-014
RESIDENCE..: BLOOMFIELD, CT 06002
TYPE OF REVIEW......: INITIAL CLASSIFICATION/PROGRAM REVIEW
NEXT REVIEW DATE....: Jan 2006
PROJ. RELEASE DATE..: 09-16-2008              RELEASE METHOD.: GCT REL
PAROLE HEARING DATE.: NONE                    HEARING TYPE...: NONE
DATE OF NEXT CUSTODY REVIEW: 06-2007          DETAINERS (Y/N): N
CIM STATUS (Y/N)....: Y            IF YES, RECONCILED (Y/N): OK
PENDING CHARGES.....: none
```

OFFENDER IS SUBJECT TO NOTIFICATION UNDER 18 U.S.C. 4042(B)  (Y/N)...: yes
    IF YES - CIRCLE ONE - DRUG TRAFFICKING/CURRENT VIOLENCE/PAST VIOLENCE

```
CATEGORY   - - - - - - CURRENT ASSIGNMENT - - - - - - -   EFF DATE   TIME

CMA       IHP PART      INS INST HRNG PGM PARTICIPANT     06-06-2003   0802
CMA       PROG RPT      NEXT PROGRESS REPORT DUE DATE     05-15-2008   1026
CMA       RPP PART      RELEASE PREP PGM PARTICIPATES     03-23-2006   1035
CMA       V94 COA91B    V94 CURR OTHER ON/AFTER 91394     03-06-1998   1403
CUS       IN            IN CUSTODY                        01-30-1998   1149
DRG       DRG I NONE    NO DRUG INTERVIEW REQUIRED        10-27-2002   0706
EDI       ESL HAS       ENGLISH PROFICIENT                02-12-1998   0001
EDI       GED HAS       COMPLETED GED OR HS DIPLOMA       06-22-1998   0001
FRP       REFUSE        FINANC RESP-REFUSES               09-07-2005   0735
LEV       HIGH          SECURITY CLASSIFICATION HIGH      06-10-2005   0836
MDS       REG DUTY      NO MEDICAL RESTR--REGULAR DUTY    06-20-2002   0956
MDS       YES F/S       CLEARED FOR FOOD SERVICE          12-29-2005   1208
QTR       A02-204L      HOUSE A/RANGE 02/BED 204L         02-08-2006   0837
RLG       MUSLIM        MUSLIM                            03-11-1998   1351
WRK       IS LAUNDRY    LAUNDRY                           06-27-2005   0001
```

WORK PERFORMANCE RATING: 3 - satisfactory

INCIDENT REPORTS SINCE LAST PROGRAM REVIEW: 06-03-2005 fighting

FRP PLAN/PROGRESS:  TRUST FUND DEPOSITS PAST 6 MO: $ 2͟0͟0͟

FRP PAYMENTS PAST 6 MO:  $ 0͟      OBLG BALANCE: $ 500, 25,000, 7,500

CURRENT FRP PLAN: $ 25/4͟    PAYMENTS COMMENSURATE: YES Y / NO ____

IF NO, NEW PAYMENT PLAN: _____

RELEASE PREPARATION PARTICIPATION: RPP part - no courses completed yet

CCC RECOMMENDATION: review 11-13 months prior to release

PROGRESS MADE SINCE LAST REVIEW: clear conduct

GOALS FOR NEXT PROGRAM REVIEW MEETING: make FRP payments in Sept and Dec; maintain clear conduct; enroll in PSE course of choice that also satisfies RPP requirement; complete additional RPP course; formulate residence plans by next TEAM

LONG TERM GOALS: complete RPP by release; save 10% of wages for release funds; complete FRP by release; stay in touch with family weekly;

OTHER INMATE REQUESTS/TEAM ACTIONS: _____

_____

SIGNATURES:

UNIT MANAGER: _____   INMATE: _____

DATE: 7/7/06        DATE: 7/7/06

Ex. J

```
 ALMBH  606.00 *        MALE CUSTODY CLASSIFICATION FORM    *     05-22-2005
 PAGE 001 OF 001                                                  08:10:40
                            (A)  IDENTIFYING DATA
 REG NO..: 12471-014            FORM DATE: 01-01-2005         ORG: ALM
 NAME....: SPEIGHT, KENNETH                              CR HX PT: 21
                                     MGTV: NONE
 PUB SFTY: GRT SVRTY                  MVED:
                            (B) BASE SCORING
 DETAINER: (0) NONE            SEVERITY.......: (7) GREATEST
 MOS REL.: 42                  PRIOR..........: (3) SERIOUS
 ESCAPES.: (1) > 10 YRS MINOR  VIOLENCE.......: (0) NONE
 PRECOMMT: (0) N/A
                            (C) CUSTODY SCORING
 TIME SERVED.....: (4) 26-75%   DRUG/ALC ABUSE.: (2) PAST 5 YRS
 MENTAL STABILITY: (4) FAVORABLE  TYPE DISCIP RPT: (3A) 1 MOD
 FREQ DISCIP RPT.: (2) 1        RESPONSIBILITY.: (0) POOR
 FAMILY/COMMUN...: (4) GOOD


                    --- LEVEL AND CUSTODY SUMMARY ---
 BASE CUST VARIANCE   SEC TOTAL   SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
 +11  +19    +1         +12       MEDIUM     N/A              IN      INCREASE


 G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

PUBLIC SAFETY FACTORS AND MANAGEMENT VARIABLES

## PUBLIC SAFETY FACTORS

There are certain factors which require increased security measures to ensure the protection of society. Staff shall apply any of the following Public Safety Factors (PSF) that are appropriate. Up to three PSFs may be entered on the "Update Security Designation (BP-337). If more than three applicable Public Safety Factors are identified, use those which would most appropriately control the inmate's placement.

**CODE**        **DESCRIPTION - PSF**

A        **NONE.** No Public Safety Factors apply.

B        **DISRUPTIVE GROUP.** A male inmate who is a validated member of a Disruptive Group identified in the Central Inmate Monitoring System shall be housed in a High security level institution, unless the PSF has been waived.

Note: At the time of initial designation, if the PSI or other documentation identifies the inmate as a possible member of one of the Central Inmate Monitoring Disruptive Groups, the Community Corrections (CC) staff shall indicate a PSF on the BP-337. However, CC staff shall not enter the CIM assignment "Disruptive Group." Upon loading this PSF on a not-yet-validated member, CC staff shall 1) make a notation in the remarks section to indicate the need for validation upon arrival at the institution, and 2) notify the Central Office Intelligence Section, via GroupWise, to advise them of the inmate's status. Upon the inmate's arrival at the designated institution, the intake screener shall notify the institution's Special Investigation Supervisor (SIS) of the inmate's PSF, in order to begin the validation process.

C        **GREATEST SEVERITY OFFENSE.** A male inmate whose current term of confinement falls into the "Greatest Severity" range according to the Offense Severity Scale (Appendix B) shall be housed in at least a Low security level institution, unless the PSF has been waived.

**CODE**        **DESCRIPTION - PSF**

assigned to the Carswell Administrative Unit, unless the PSF has been waived.

A male inmate who has escaped from a secure facility (prior or instant offense) with or without the threat of violence or who escapes from an open institution or program with a threat of violence shall be housed in at least a Medium security level institution, unless the PSF has been waived.

M        **PRISON DISTURBANCE.** A male or female inmate who was involved in a serious incident of violence within the institution and was found guilty of the prohibited act(s) of Engaging [Encouraging a Riot, or acting in furtherance of such as described in, but not limited to institution disciplinary codes such as 103, 105, 106, 107, 212, 213 or 218. Such a finding must be in conjunction with a period of multiple institution disruptions. Males will be housed in at least a HIGH security level institution and females shall be assigned to the Carswell Administrative Unit, unless the PSF has been waived.

**DISCONTINUED PUBLIC SAFETY FACTORS**

D        Firearms
M        High Drug
J        Designation Assessment

PS 5100.07
9/3/99
Appendix B, Page 1

OFFENSE SEVERITY SCALE

Ex. K(2)

## GREATEST SEVERITY

**Aircraft Piracy** - placing plane or passengers in danger
**Arson** - substantial risk of death or bodily injury
**Assault** - serious bodily injury intended or permanent or
    life threatening bodily injury resulting)
**Car Jacking** - any
**Drug Offense** - see criteria below*
**Escape** - closed institution, secure custody, force or
    weapons used
**Espionage** - treason, sabotage, or related offenses
**Explosives** - risk of death or bodily injury
**Extortion** - weapon or threat of violence
**Homicide or Voluntary Manslaughter** - any
**Kidnaping** - abduction, unlawful restraint, demanding or
    receiving ransom money
**Robbery** - any
**Sexual offenses** - rape, sodomy, incest, carnal knowledge,
    transportation with coercion or force for commercial
    purposes
**Toxic Substances/Chemicals:** - weapon to endanger human life
**Weapons** - distribution of automatic weapons, exporting
    sophisticated weaponry, brandishing or threatening use of
    a weapon

\*       Any drug offender whose current offense includes the following
        criteria shall be scored in the Greatest severity category:

        The offender was part of an organizational network and he or she
        organized or maintained ownership interest/profits from large-scale
        drug activity,

                        \*\*\*AND\*\*\*

        the drug amount equals or exceeds the amount below:

        **Cocaine** - greater than or equal to 10,000 gm, 10 K, or  22 lb
        **Cocaine Base "Crack"** - greater than or equal to 31 gm
        **Hashish** - greater than or equal to 250,000 gm, 250 K, or 551 lb
        **Marijuana** - greater than or equal to 620,000 gm, 620 K, or 1,367 lb
        **PCP** - greater than or equal to 100,000 mg, 100 gm, or 20,000 dosage
        units
        **Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb
        **Methamphetamine** - greater than or equal to 16,000 gm, 17 K, or 35 lbs
        **Other illicit drugs:** - Amphetamine, Barbiturates, LSD, etc. greater
        than or equal to 250,000 dosage units

BP-S409.051 **REQUEST FOR T. .SFER/APPLICATION OF MANAG ENT VARIABLE** CDFRM
AUG 99
**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| From: Troy Williamson, Warden, FCI Allenwood, PA | Date: January 1, 2005 |
| Inmate's Name: Speight, Kenneth | Register No.: 12471-014 |
| To: D. Scott Dodrill, Northeast Regional Director | E.L. Tatum Jr., Regional Designator |

<u>XXX</u> Transfer to: <u>FCI Bennettsville, South Carolina, via Code 318, Increase Population</u>

____ Apply Management Variable(s) _____

____ Update Management Variable Expiration Date.  (New Date): _____

1.  Inmate's Medical Status: Mr. Speight is assigned "Regular Duty" status with no medical restrictions. There are no medical problems which preclude transfer. Inmate Speight has been assigned to Care Level 2 status.

2.  Institution Adjustment (Include a brief description of the inmate's adjustment during this period of incarceration with emphasis on recent adjustment): Mr. Speight has adjusted well during his incarceration.  He is assigned to the Recreation department where he earns good evaluations. Mr. Speight currently refuses to participate in the Financial Responsibility Program.

DISCIPLINARY RECORD

3. Mr. Speight has incurred the following discipline during his incarceration:

| Date | Code/Offense | Disposition |
|---|---|---|
| 06/17/04 | 305-Possession of Unauthorized Item | DHO-13 days DIS GCT; 15 days DIS SEG; 180 days Loss of Commissary; 180 days Loss of Phone |
| 09/24/03 | 310-Being Absent from Assignment | DHO-13 days DIS GCT;15 days DIS SEG; 60 days Loss of Commissary |
| 06/06/03 | 311-Failure to Work as Instructed | UDC-30 days Loss of Commissary |
| 11/30/00 | 406A-Using Phone/Mail W/O Authorization | DHO-180 days Loss of Phone |
| 06/02/99 | 316-Being in an Unauthorized Area | UDC-14 days Loss of Commissary |
| 02/27/98 | 399-Disruptive Conduct-Moderate | UDC-60 days Loss of Commissary |

4.  Rationale for Referral.  (For Mariel Cuban Detainees, include availability of community resources and status of INS review process in this section.): On July 30, 2002, Mr. Speight was designated to FCI Allenwood, Pennsylvania.  Mr. Speight's security classification level is "Medium" with "In" custody. FCI Bennettsville, South Carolina, has been requested.

| | |
|---|---|
| 5a.  Parole Hearing Scheduled:____Yes XXX NO | b.  If yes, when _n/a_ |

6.  Note any past or present behavior and/or management/inmate concerns.  There are no notable concerns in this case.

Staff have checked the following SENTRY Programs to ensure that they are correct and current:
   Inmate Profile               CIM Clearance and Separatee Data
   Inmate Load Data           Custody Classification Form
   Sentence Computation     Chronological Disciplinary Record

Prepared by: A. Foura, Case Manager             , Unit Manager

If the transfer is approved, a Progress Report will be completed prior to transfer.
*For Mariel Cuban Detainees - Staff have entered the CMA Assignment of "C.P. RV DT" to indicate the need for a Cuban Review Panel Hearing four months from his/her Roll-Over Date.
(This form may be replicated via WP)

Ex. M

```
   ALPCR  607.00 *      MALE CUSTODY CLASSIFICATION FORM      *      07-12-2005
PAGE 001 OF 001                                                     10:31:10

       REGNO: 12471-014              FORM DATE: 06-28-2005          ORG: ALP
(A) NAME....: SPEIGHT                KENNETH
DES FACL/LEV: ALP        /HIGH       MGTV: NONE
PUBSFTY: GRT SVRTY                   MVED:


(B) DETAINER: (0) NONE               SEVERITY.......: (7) GREATEST
MOS REL.....: 38
PRIOR.......: (3) SERIOUS            ESCAPES........: (1) > 10 YRS MINOR
VIOLENCE....: (5) < 5 YRS MINOR      PRECOMMT STATUS: (0) N/A



(C) TIME SERVED.....: (4) 26-75%     DRUG/ALC ABUSE.: (2) PAST 5 YRS
MENT/PSYCH STABILITY: (4) FAVORABLE  TYPE DISCIP RPT: (2A) 1 HIGH
FREQ DISCIP REPORT..: (1) 2-5        RESPONSIBILITY.: (0) POOR
FAMILY/COMMUN TIES..: (4) GOOD


========================= LEVEL AND CUSTODY SUMMARY ========================
BASE   CUST  VARIANCE   SEC TOTAL   SCORED LEV  MGMT SEC  LEVEL   CUSTODY  CONSIDER
+16    +17     +2         +18        HIGH        N/A               IN      INCREASE

(D) TYPE REVIEW    NEW CUSTODY    APPROVED:____YES____NO  NEXT REVIEW:_____
    ____REGULAR       ___MAX
    ____EXCEPTION     ___IN      CHAIRPERSON SIGNATURE....: _____
                      ___OUT     WARDEN/DESIGNEE SIGNATURE
                      ___COM        FOR EXCEPTION REVIEW: _____


REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:
```

```
COPY: CENTRAL FILE, SECTION TWO
      INMATE
```

```
G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

        REGNO: 12471-014    NAME: SPEIGHT, KENNETH                    ORG: CBN
RC/SEX/AGE..: B/M/54   FORM D/T: 01-26-1998/0934    RES: BLOOMFIELD, CT 06002
OFFN/CHG...: FELON IN POSS OF FIREARM, POSS OF FIREARM W/OBLITERATED
             SERIAL NO.   3:96CR0007(AWI)   105MO/3YRS S/R
CUSTODY...: IN           BIL:              SEN LIMT: NONE
CITIZENSHP: UNITED STATES OF AMERICA    PUB SAFETY: GRT SVRTY
CIM CONSID:                                          USM: CT
JUDGE.....: THOMPSON     REC FACL:                REC PROG:
DETAINER..: NONE         SEVERITY: GREATEST       LENGTH..: 84 PLUS MOS (105)
PRIOR.....: SERIOUS      ESCAPES.: > 10 YRS MINOR VIOLENCE: NONE
PRECOMMT..: N/A          V/S DATE:                V/S LOC.:
                         SEC TOT.: 16          SCORED LEV: MEDIUM
CCM RMKS..: PARTIPANT IN CONSP THAT OBTAINED & POSS FIREARMS W/OBLITER'D
            SERIAL NOS.PR:FA/X2;PROB VIOL;CONSP TO SELL NARC;DANGER WPN;
            LARCENY/X2.PD:NONE.MED:'84 BRKN NECK VERTEBRAE=STIFFNESS &
            PAIN;HERNIA RT SIDE;COCAINE/MARIJ ABUSE. 588 DAYS JTC  EC/PW
FACL DESIG: RAY BROOK FCI        DESIG: NER ARP 01-30-1998 DESIG REAS: LEVEL
MGMT: N/A                   MV EXP: N/A        SEN: N/A
DESIG RMKS: INMATE DOES NOT REQUIRE A MEDICAL DESIGNATION PER MED DESIG


G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED


Ex. N

Ex. O (1)

3 June 2005

Kenneth Eugene Speight
% Fed. Gov. 2005
White Deer, Pennsylvania
[17887]

Certified Mail# 7000 0600 0027 1171 1423

Wanda Hunt, Chief
FOIA/PA Section
Federal Bureau of Prisons
320 First Street, N.W.
Washington, DC 20534

Re: FREEDOM OF INFORMATION/PRIVACY ACT REQUEST

Dear Ms. Hunt:

This is a noncommercial request pursuant to the Freedom of Information Act, 5 USC §552, as amended, and the Privacy Act of 1974, 5 USC §552a, for disclosure of records in the custody of your "agency." Please provide copies of the following:

1. All files, reports, records, memoranda, and other documentation, which supports, substantiates, and/or provides the basis for the "medium security custody classification," as pertains to Kenneth Eugene Speight, Reg. No. 12471-014; if there are no documents responsive to this request please so indicate;

2. All files, reports, records, memoranda, and other documentation, which constitutes recommendations and/or requests for "Greater Security Management or Variable, as pertains to

FOIA/PA, WHCLF&SFB0C-010305
Page 1

Kenneth Eugene Speight, Reg. No. 12471-014; if there are no documents responsive to this request please so indicate;

3. All files, reports, records, memoranda, and other documentation, which supports, substantiates, and/or provides the basis for determination, for "Public Safety" factor, at "GREATEST SEVERITY #7," as pertains to Kenneth Eugene Speight, Reg. No. 12471-014; if there are no documents responsive to this request please so indicate;

4. All files, reports, records, memoranda, and other documentation, which supports, substantiates, and/or provides the basis for determination that "offender is subject to notification under 18 USC 4042(B)," as pertains to Kenneth Eugene Speight, Reg. No. 12471-014; if there are no documents responsive to this request please so indicate in your reply.

With respect to any "exemption(s) you may wish to claim, please provide any reasonably segregable portion of a record after deletion of the portion(s) which are exempt along with the legal justification for each such deletion.

Thank you in anticipation of your timely compliance.

Cordially Yours,
Kenneth Eugene Speight

FOIA/PA, WHCLF&SFB0C-010305
Page 2

Ex. O (2)

August 14, 2006

Kenneth Eugene Speight
c/o P.O. Box 3000
White Deer, Pennsylvania [17887]

Certified Mail # 7003 3110 0006 1298 7860

Wanda Hunt, Chief
FOIA/PA Section
Federal Bureau of Prisons
320 First Street
Washington, DC 20534

Re: FREEDOM OF INFORMATION ACT/PRIVACY ACT REQUEST

Dear Ms. Hunt:

This is a non-commercial request pursuant to the Freedom of Information Act, 5 USC § 552, as amended, and the Privacy act of 1974, 5 USC § 552a, for disclosure of records in the custody of your "agency." Please provide copies of the following:

1. All files, reports, records, memoranda, and other documentation in any and all Pre-Sentence Investigation Report(s) which support the bases for "GREATEST SEVERITY" of current offense, or otherwise, "Security Designation Data" section of Program Statement, as required in 5 USC 552(a)(1) and (2), relied upon for such designation;

2. All files, reports, records, memoranda, and other documentation in any and all Pre-Sentence Investigation Report(s) which support the basis that "GREATEST SEVERITY" of prior offense(s) (discharged or paroled, 2003), or otherwise, "Severity Designation Data" section of Program Statement, as required in 5 USC 552(a)(1) and (2), relied upon for such designation;

3. All files, reports, records, memoranda, and other documentation which provides the basis for determination that "failure to appear" in State Court constitutes an escape (or absconding from supervision) as required in 5 USC 552(e)(1)(e), and reproduce verified documents relied upon which support such a finding with respect to KENNETH E. SPEIGHT, 12471-014;

4. All files, reports, records, memoranda, and other documentation which provides the basis for determination as to "History of Violence" with respect to KENNETH E. SPEIGHT, 12471-014, and produce verified documentation evidencing "conviction or finding of guilt," according to the offense behavior.

FOIA/PA,WHICHFOI§BOP-081406

1

If there are no documents or files responsive to any request in either paragraph(s), 1 thru 4, please so indicate in your reply.

With respect to any "exemption(s)" you may wish to claim, please provide any reasonably segregable portion of a record after deletion of the portion(s) which is exempt, along with the legal justification for each such deletion.

Thank you in anticipation of your timely compliance.

Cordially yours,

Kenneth Eugene Speight

FOIA/PA,WHICHFOI§BOP-081406

2

Federal Bureau of Prisons

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Kenneth Eugene Speight          12471-014          1-A          usp Allenwood
    LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A- INMATE REQUEST** All attachments, "Informal Resolution Form," dated 9-6-06, and "Informal Resolution Request, dated July 28, 2006, are incorporated by reference as fully set forth here. The informal reply by staff is non-re-spnsive as to the correction of my custody level. No explanation is provided for why or how my custody classification was changed from +6 to +18. Addi-tionally, the current offense severity should not be "MODERATE". There is no justification for such designation. Please provide the factual and legal bases for these determinations. And, make the appropriate adjustsments to reflect my classification prior to infusion of false or inaccurate informa-tion to my file.

~~23 September 2006~~
DATE                                                             SIGNATURE OF REQUESTER

**Part B- RESPONSE**

10/2/06

I WISH TO WITHDRAW THIS ADMIN REMEDY, DUE TO MY ISSUE BEING RESOLVED BY MY UNIT TEAM

#12471-014

---

DATE                                                             WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                      CASE NUMBER: 428661-F1

---

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____
DATE                                                             RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN          Printed on Recycled Paper          BP-229(13)
                                                    APRIL 1982

$Ex. Q$

February 12, 2007                    Kenneth Eugene Speight
                                     c/o FCI McKean
                                     P.O. Box 8000
                                     Bradford, Pennsylvania
                                                      [16701]


Wanda Hunt, Chief
FOIA/PA Section
Federal Bureau of Prisons
320 First Street, N.W.
Washington, D.C. 20534

        Re: **FREEDOM OF INFORMATION ACT/PRIVACY ACT REQUEST**
            **(Second Request)**

Dear Ms. Hunt:

        This is s non-commercial request pursuant to the Freedom of
Information Act, 5 USC § 552, and the Privacy Act, 5 USC § 552a, for
disclosure of records in the custody of your "agency." Please pro-
vide copies of the following:

1.    All Memoranda, or any Memorandum prepared by any USP Allenwood
staff regarding the "closure" or "withdrawal" of Administrative
Remedy Control No. ID #428661-F1;

        If there are no documents responsive to this request, please so
        indicate in your reply;

2.    All files, records, or other documentation related to Admini-
strative Remedy Request No. 428661-F1, filed with Administrative
Remedy Coordinator, USP Allenwood, on or about September 29, 2006;

        If there are no documents responsive to this request. please so
        indicate in your reply.

        With respect to any "exemption(s)" you may wish to claim, please
provide any reasonably segregatable portion of a record after dele-
tion of the portion(s) which is exempt, along with the legal justi-
fication for each such deletion.

        Thank you in anticipation of your timely compliance.

                                     Cordially yours,


                                     Kenneth Eugene Speight


**FOIA/PA, WHChFOI$BOP-021207**