UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENNETH EUGENE SPEIGHT,    ) | |
| ) | |
| Plaintiff,    ) | Civil Action No. 07-208 (RCL) |
| ) | |
| v.    ) | |
| ) | |
| FEDERAL BUREAU OF PRISONS,    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

This is an action brought by *pro se* prisoner Kenneth Eugene Speight.  Mr. Speight is housed in the Western District of Pennsylvania.  See Amended Complaint ¶ 3.  Plaintiff asserts a cause of action under the Privacy Act, 5 U.S.C. § 552a.  Amended Complaint ¶ 2.  He claims that the defendant willfully and intentionally failed to maintain accurate records in his Central File which led to an adverse security classification.  Amended Complaint.  He demands that defendant expunge the erroneous classification and security designation data from his Central File and he seeks money damages.  Amended Complaint ¶ 29. b & c.

Specifically, plaintiff claims that beginning in February 1998 and continuing through October of 2006, BOP staff deliberately entered and maintained false information in Plaintiff's

> file(s) for the purpose of effecting adverse security designation and custody classification determinations so as to justify housing Plaintiff in higher security prisons, and as a consequence of which, Plaintiff was unreasonably and repeatedly expose to the dangers attendant to being incarcerated with younger, violent prisoners, and resulting in Plaintiff being attacked and injured on multiple occasions.

Amended complaint ¶ 26. In some instances, Plaintiff refers to his "Central File" as containing erroneous information. Amended Complaint ¶¶ 6, 11, 15, 29.b. He also refers to his "custody classification file" (¶ 16), "classification records" (¶ 21), and "application to request transfer" (¶ 18) as containing erroneous information.

Defendant moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim under which relief can be granted. Plaintiff has moved for summary judgment alleging that there are no genuine issues of material facts. Defendant opposes the motion.

## II.   STANDARD OF REVIEW FOR MOTION FOR SUMMARY JUDGMENT

When a court considers a motion for summary judgment, all evidence and the inferences drawn from the evidence must be considered in the light most favorable to the nonmoving party, see, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C.Cir. 1995). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). Supreme Court precedent holds that a genuine issue of fact is one that could change the substantive outcome of the litigation. Id. at 246. The non-moving party cannot "create a genuine issue through mere speculation or building of one inference upon another." Id. at 696-697. See also Anderson, 477 U.S. at 247-248. To meet its burden of proving that there

are no genuine facts in dispute, the moving party may offer for consideration affidavits, exhibits, depositions, and other discovery materials. Fed. R. Civ. P. 56(e); <u>Internet Financial Services, LLC. v. Larson-Jackson</u>, 310 F. Supp. 2d 1 (D.D.C. 2004).

### III.  ARGUMENT

Section 552a(e)(5) of the Privacy Act requires that an agency maintain all records that it uses to make a determination about any individual with a level of accuracy, relevance, timeliness, and completeness that reasonably assures fairness to the individual in the determination. The Privacy Act provides civil remedies at 5 U.S.C. § 552a(g) for violations of § 552a(e)(5) of the Act. Section (g)(1)(C) provides that an individual may bring a civil action against an agency that does not maintain a recording relating to that individual with the level of "accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the ...rights, or opportunities of...the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual..." Section (g)(4) provides for civil remedies if the plaintiff can show that the agency willfully or intentionally failed to maintain a record which resulted in an adverse determination.

Plaintiff has the burden of proving that (1) a defective record (2) proximately caused (3) an adverse determination concerning the plaintiff and that (4) the agency acted in an "intentional or willful" manner. Plaintiff has failed to meet his burden to show that an "adverse determination" resulted from the error. *Id*. Finally, there is no evidence that officials at BOP acted wilfully or intentionally by refusing to correct an error. *Id*.

A. PLAINTIFF'S AMENDMENT CLAIM FOR EXPUNGEMENT MUST BE DISMISSED BECAUSE THE FEDERAL BUREAU OF PRISONS IS EXEMPT FROM THE

AMENDMENT PROVISION OF THE PRIVACY ACT.

Even if the information in plaintiff's records were inaccurate, the BOP is exempt from the amendment provision of the Privacy Act. 5 U.S.C. § 552a(j)(2). 28 C.F.R. § 16.97. As provided in 5 U.S.C. 552a(j), "the head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553 (b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is:

> (1) maintained by an agency or component thereof which performs as its principal function any activities pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, **correctional** [emphasis added], probation, pardon, or parole authorities, and which consists of . . .

28 C.F.R. § 16.97(a).

The D.C. Circuit Court held in *Sellers v. Bureau of Prisons*, 959 F.2d. 307, 309 (D.C. Cir. 1992), and reaffirmed in *Griffin v. Ashcroft*, 2003 WL 22097940, that the BOP system of records is exempt from the amendment provisions of the Privacy Act. *See also*, *Risley v. Hawk*, 108 F.3d 1396 (C.A.D.C. March 5, 1997) in which the court held that the BOP was exempt from the Privacy Act provision requiring inaccurate files to be amended. *Phillips v. Hawk*, 1999 WL 325487, *1 (D.C. Cir.) (citing *White v. United States Probation*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (per curiam); *Deters v. United States Parole Comm'n*, 85 F.3d 655, 658 n.2 (D.C. Cir. 1996)). Thus, plaintiff is barred from seeking amendment of his Central File. *Id.*

Until 2002, because the Bureau of Prisons had not been exempted from the accuracy provision of the Privacy Act, the Bureau of Prisons remained subject to civil actions under subsection (g)(1)(C) of the Act.  Sellers, 959 F.2d at 309 (allowing civil action against Bureau of Prisons because "regulations governing the Bureau of Prisons and U.S. Parole Commission do not exempt those agencies' records from section (e)(5) of the Act"); see also Deters v. U.S. Parole Comm'n, 85 F.3d 655, 657 (D.C. Cir. 1996) ("Subsection (g)(1)(C) provides a civil remedy if an agency fails to satisfy the standard in subsection (e)(5)").

In 2002, the Department of Justice published a regulation exempting certain Bureau of Prisons' record systems from the accuracy provision of the Privacy Act, § 552a(e)(5).  See 28 C.F.R. § 16.97.  The new regulation took effect on August 9, 2002.  Among the record systems newly exempted from the accuracy provision was the Bureau of Prisons's Inmate Central Records System.  The impact of the 2002 regulations on cases such as this one was recently recognized by the D.C. Circuit in Martinez v. BOP, 444 F.3d 620, 624 (D.C. Cir. 2006):

> [T]he district court properly dismissed appellant's claims against the BOP. The BOP has exempted its Inmate Central Record System from the accuracy provisions of the Privacy Act, 5 U.S.C. § 552a(e)(5). See 28 C.F.R. § 16.97(j). Appellant does not challenge the BOP's authority to exempt its records, and the BOP did not expressly waive the exemption.

Martinez, 444 F.3d at 624.

B. PLAINTIFF'S PRIVACY ACT CLAIM IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

Under the accuracy provision of the Privacy Act, claims must be brought within two years of the "date on which the cause of action accrues." 5 U.S.C. §552a(g)(1). The two-year limitations period may only be tolled where there has been material and willful misrepresentation of information necessary to establish agency liability. *Id.*; *Tijerina v. Walters*, 821 F.2d 789, 794 (D.C. Cir. 1987). Here, plaintiff has failed to adequately support his contentions of material and willful misrepresentation with colorable evidence.

Plaintiff alleges that erroneous data was entered onto his record as early as 1998 which resulted in his misclassification with regard to his custody status. Amended Complaint ¶ 6. He further alleges that he discovered in 1999 that he had been improperly scored. Amended Complaint ¶¶ 7, 8. He alleges that a BOP employees made false representations from 1999, through 2005. Amended Complaint ¶¶ 9-19. Plaintiff filed his this action on January 30, 2006, but did not amend his complaint to assert his Privacy Act claim until May 10, 2007. Plaintiff's claims described in the amended complaint all accrued before May 10, 2005 and are barred by the statute of limitations.

C. PLAINTIFF FAILS TO STATE A CLAIM FOR MONEY DAMAGES UNDER THE PRIVACY ACT.

In order to prevail on a claim for money damages against the BOP under 5 U.S.C. § 552a(g)(1)(C) and (g)(4), for violation of subsection (e)(5) of the Privacy Act, (assuming such a cause of action were available, which it is not) a plaintiff must show (1) that he has been aggrieved by an adverse determination of the BOP; (2) that the BOP failed to maintain his records with the degree of accuracy necessary to assure fairness in that determination; (3) that the BOP's reliance on the inaccurate records was the proximate cause of the adverse determination;

and (4) that the BOB acted intentionally or willfully in failing to maintain accurate records. *See Deters v. U.S. Parol Commission*, 85, F.3d 655, 657-60 (D.C. Cir. 1996)(the fact that no parole hearing had yet been held to determine plaintiff's status did not constitute an "adverse decision", and the Commission's requirement of such a hearing did not qualify as "intentionally or willfully").[1]

The words "intentional" and "willful" in subsection (g)(4) do not have their vernacular meanings; instead, they are "terms of art." *White v. OPM*, 840 F.2d 85, 87 (D.C. Cir. 1988). The Privacy Act's legislative history indicates that this unique standard is "[o]n a continuum between negligence and the very high standard of willfull, arbitrary, or capricious conduct," and that it "is viewed as only somewhat greater than gross negligence." 120 Cong. Rec. 40, 406 (1974), *reprinted in* Source Book at 862. While not requiring premeditated malice, *see Parks v. IRS*, 618 F. 2d 677, 683 (10th Cir. 1980), the voluminous case law construing this standard makes clear that it is a formidable barrier for a plaintiff seeking damages. *Deters v. United States Parole Comm'n*, 85 F.3d 655, 660 (D.C. Cir. 1996)(Parole Commission did not ""flagrantly disregard'" plaintiff's privacy when it supplemented his file with rebuttal quantity of drugs attributed to him in presentence investigation report (PSI) and offered inmate hearing concerning accuracy of disputed report and '[e]ven if the Commission inadvertently or negligently violated [plaintiff's] Privacy Act rights by not examining the accuracy of the PSI before preparing a preliminary assessment...such a violation (if any) could in no sense be deemed 'patently egregious and unlawful'"). The type of conduct required by the agency to be willful and

---

[1] In addition, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(7)(e).

intentional is "either committing the act without grounds for believing it to be lawful, or...flagrantly disregarding others' rights under the Act." *Albright v. U.S.*, 732 F.2d 181, 188 (D.C. Cir. 1984).

Here the plaintiff fails to state a cause of action under the Privacy Act because although he uses the words "deliberate", "intentional" and "willful" in a conclusory fashion to describe conduct by BOP staff, his description of the conduct itself falls short of meeting the standard of "intentional" and "willful" violations of the Privacy Act. For instance, plaintiff alleges that "BOP employee, Dr. Gilbertson, entered classification data into Plaintiff's 'Central File' falsely indicating that drug abuse contributed to the offense for which Plaintiff was incarcerated....As a consequence of this erroneous information, Plaintiff was restricted to the lowest pay grade at his prison job, and given an adverse score on his custody classification." Amended complaint, ¶ 6. Elsewhere Plaintiff alleges that "M. Picerno admitted ... that plaintiff had been improperly scored as to custody classification..." Amended complaint, ¶ 8. Plaintiff then concedes that the erroneous Public Safety designation was removed on October 1, 1999. *Id.* Such descriptions of the conduct by BOP staff do not rise to the level of a Privacy Act violation as a matter of law.

## CONCLUSION

Wherefore, for each of the independent reasons set forth above, the Plaintiff's Motion for Summary Judgment should be denied.

Respectfully submitted,


\_\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


\_\_/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


\_\_/s/_____
CHARLOTTE A. ABEL D.C. Bar # 388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth Street, NW
Washington D.C.   20530
(202) 307-2332

## CERTIFICATE OF SERVICE

I certify that the foregoing Opposition to Motion for Summary Judgment, and proposed order were served upon plaintiff on this 4th day of February by depositing a copy in the U.S. Mail, first class postage prepaid, addressed to:

Kenneth Eugene Speight
#12471-014
POB 8000
Bradford, PA 16701

        /s/
CHARLOTTE A. ABEL, D.C. Bar # 388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth Street, NW
Washington D.C.  20530
(202) 307-2332

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KENNETH EUGENE SPEIGHT,         )
                                )
        Plaintiff,               )    Civil Action No. 07-208 (RCL)
                                )
    v.                          )
                                )
FEDERAL BUREAU OF PRISONS,      )
                                )
        Defendant.               )
                                )

DEFENDANT'S STATEMENT
OF GENUINE ISSUES

Defendant responds as follows to plaintiff's statement of material facts but denies that all of the issues identified by plaintiff are material or capable of verification. Plaintiff has failed to provide adequate record support for his statements.

    1. Admit this Paragraph.

    2. Admit that Plaintiff entered BOP custody in February 1998 [ see Attachment 1]. Admit that Plaintiff was designated to FCI Ray Brook in February 1998 to serve a 105 month sentence. Admit that Plaintiff was convicted of violating 18 USC § 922(g)(1), but add that Plaintiff was also convicted of violating 18 USC § 922(k) (possession of a firearm with an obliterated serial number). Admit that the custodial portion of his 105 month sentence was satisfied.

    3. Admit this Paragraph.

    4. Admit that BOP employees entered classification data that drug abuse may have contributed to his current offences and that he was required to participate in drug abuse education

programs Deny this information was falsely entered.  Information contained in the Plaintiff's Presentence Investigation report indicates that at the time of his arrest he possessed illegal drugs, he admitted prior marijuana and cocaine use, and he had a prior criminal conviction for a drug-related offense.

    5.  Defendants lack knowledge as to when Plaintiff discovered that his Public Safety classification was "Greatest Severity."

    6.  Admit that Michelle Picerno removed the Greatest Severity Public Safety Factor based on the reduction of the instant offense from Greatest to Moderate.  Admit that, on October 1, 1999, Plaintiff's Public Safety factor was listed as "none."  Admit that, on October 1, 1999, Plaintiff's custody classification was "LOW."

    7.  Admit that, on October 28, 1999, Ms. Picerno wrote a Memorandum concerning Plaintiff.  Plaintiff's statement in the first sentence that Picerno made "false representations" lacks sufficient specificity to allow Defendants to admit or deny.  Admit that, in this Memorandum, Ms. Picerno recommended the "Greater Security Management Variable" be applied to Plaintiff and recommended Plaintiff remain at FCI Ray Brook.  Admit that Ms. Picerno stated Plaintiff "is required" to participate in the Basic Drug Education Program, but deny that this statement was false.  Information contained in the Plaintiff's Presentence Investigation report indicates that at the time of his arrest he possessed illegal drugs, he admitted prior marijuana and cocaine use, and he had a prior criminal conviction for a drug-related offense. Admit that Ms. Picerno described Plaintiff as "argumentative," but deny that Ms. Picerno stated Plaintiff "was 'argumentative' with staff."

    8.  Admit that Plaintiff worked in food service.  There is insufficient information to

accurately determine whether this was a "priority job." Admit that Plaintiff was described as an asset to the department on a Work Performance Rating dated April 1998. Deny that Plaintiff received high work performance reports as Plaintiff's Exhibit F does not include a "high" category of rating. Admit that Ms. Picerno asserted Plaintiff had "difficulty communicating with staff." Deny that there was no basis for this statement as Plaintiff's Exhibit F does not contain any such reference and the Plaintiff's disciplinary history supports this claim..

9. Deny this Paragraph. [PS 5100.08, Ch 5, pg 7 - <u>see</u> Attachment 4].

10. Admit that officials at FCI Ray Brook referenced "outstanding warrant" on September 29, 1998 and March 17, 1999 Program Review forms. Deny that the presence of this statement on the Progress Review forms was the sole reason for a security designation which precluded Plaintiff's placement in a low security facility.

11. Admit that Plaintiff was designated to FCI Allenwood in July 2002. Admit that Plaintiff's security designation was "LOW." Deny that the Greater Security Management Variable (GSMV) recommended by Ms. Picerno was in effect. Deny that the GSMV had an expiration date greater than the 24 months allowable by PS 5100.08, Ch 5, pg 5. [<u>see</u> Attachment 5] Deny that Plaintiff's Administrative Remedy was "futile." Defendants lack sufficient information to determine when Plaintiff learned of "false statements" by Ms. Picerno, but admit that Bureau of Prisons responded to two FOIA requests submitted by Plaintiff in 2005.

12. Deny that Plaintiff's "drug abuse education" requirement was erroneous based on information contained in the Plaintiff's Presentence Investigation. Information contained in the Plaintiff's Presentence Investigation report indicates that at the time of his arrest he possessed illegal drugs, he admitted prior marijuana and cocaine use, and he had a prior criminal conviction

for a drug-related offense. Admit that Plaintiff was subject to notification under 18 USC § 4042(b). Deny that this data was false.

13. Admit that Plaintiff filed a civil action against BOP officials in June 2004. Deny that Plaintiff was transferred from FCI Allenwood in June 2004.

14. Admit this Paragraph.

15. Admit Plaintiff's initial Public Safety Factor was changed from Greatest Severity to Moderate. Deny that Plaintiff has never "been sentenced for or even charged with" any offense listed as requiring a "Greatest Severity" Public Safety Factor, as Defendant is incapable of verifying Plaintiff's entire criminal history. Admit the rest of the Paragraph with the caveat that Plaintiff references an out of date Program Statement - Chapter 7 is now Chapter 5; Appendix B is now Appendix A.

16. Deny officials at FCI Allenwood asserted Plaintiff requested a transfer to FCI Bennettsville, South Carolina on the Request for Transfer document dated January 1, 2005.

17. Deny that, on February 28, 2005, Plaintiff was attacked by another inmate. [DHO hearing held on June 3, 2005 found that Plaintiff was involved in a mutual fight - see Attachment 6] Admit that Plaintiff was designated to USP Allenwood on June 13, 2005 and that his security designation was "HIGH."

18. Deny that the "Greatest Severity" Public Safety Factor was the sole cause for classifying Plaintiff as a "high security" inmate as his institution adjustment and disciplinary history.

19. Admit Plaintiff discharged the custodial portion of the firearms sentence on April 3, 2003. Deny that BOP employees "mischaracterized" Plaintiff's sentence. [see Plaintiff's Ex. N]

20. Admit this Paragraph.

21. Admit Plaintiff filed an administrative remedy request to correct what he believed was "erroneous" information. Deny and leave Plaintiff to prove that he received a "forged" BP-9 on October 25, 2006, "claiming" to withdraw his administrative remedy with the Warden. Admit Plaintiff was transferred.

22. Admit Plaintiff attaches to his complaint a letter which appears to make a Freedom of Information Act (FOIA) requests related to this BP-9. Deny that the BOP has "failed/refused" to respond to or acknowledge this request as a review of the FOIA database does not indicate receipt of processing of a request for these records nor does Plaintiff indicate a specific FOIA request number being assigned to this request. The FOIA database indicates that the Defendant has responded to numerous other FOIA requests submitted by the Plaintiff. .

23. Admit FCI Ray Brook is a medium security facility. Deny the remainder of the Paragraph, as Plaintiff's allegations lack sufficient specificity and fails to define his terms to allow Defendants to admit or deny.

24. Admit that on July 18, 2000, the Plaintiff was involved in an altercation with another FCI Ray Brook inmate.

25. Deny this paragraph.

26. Deny this Paragraph.

27. Deny that, on February 28, 2005, Plaintiff was "assaulted" by another inmate. A hearing held on June 3, 2005 found that Plaintiff was involved in a mutual fight-see Attachment 6.

28. Admit USP Allenwood is a high security institution. Deny the remainder of the

Paragraph. Plaintiff's assertion that a "substantial percentage of the prison population" is serving life or multiple life sentence and that many of these inmates are "extremely violent" lacks sufficient specificity and fails to define his terms to allow Defendants to admit or deny.

29. Deny this Paragraph. Plaintiff fails to state facts with sufficient specificity and fails to define his terms to allow an accurate response.

30. Deny Plaintiff had no history of violence or factors militating to a greater security designation. [see, Plaintiff's discipline history] Deny that BOP employees knowingly and willfully engaged in a practice designed to artificially inflate Plaintiff's custody level and prevent his transfer to a low security facility. Plaintiff's security designation was not improper, based on his criminal history, the instant offense, disciplinary history while incarcerated, and his refusal to participate in BOP programs. Deny Plaintiff was exposed to a substantial risk of serious harm or suffered any actual injury. Plaintiff has provided no evidence that he has suffered or was in danger of suffering any serious injury while in the custody of the Bureau of Prisons.

Respectfully submitted,


\_\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


\_/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


\_\_/s/_____
CHARLOTTE A. ABEL D.C. Bar # 388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth Street, NW
Washington D.C.  20530
(202) 307-2332

## CERTIFICATE OF SERVICE

I certify that the foregoing Opposition to Motion for Summary Judgment, and proposed order were served upon plaintiff on this 4th day of February by depositing a copy in the U.S. Mail, first class postage prepaid, addressed to:

Kenneth Eugene Speight
#12471-014
POB 8000
Bradford, PA 16701

    /s/
CHARLOTTE A. ABEL, D.C. Bar # 388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth Street, NW
Washington D.C.   20530
(202) 307-2332

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENNETH EUGENE SPEIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-208 (RCL) |
| | ) |
| FEDERAL BUREAU OF PRISONS, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Upon consideration of Plaintiff's Motion for Summary Judgment, it is on this

_____day of _____,

ORDERED: that Plaintiff's Motion for Summary Judgment is DENIED. It is

FURTHER ORDERED: that the Amended Complaint is Dismissed with Prejudice.

_____
ROYCE C. LAMBERTH
United States District Judge