**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KENNETH EUGENE SPEIGHT,
Plaintiff,

-vs- Civil Number 1:07-cv-208(RCL)

FEDERAL BUREAU OF PRISONS,
Defendant.

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

The Defendant has filed opposition to the Plaintiff's Motion for Summary Judgment. In its opposing papers, the Defendant references numerous "Attachment[s]" which, presumably are in accompaniment. However, the Plaintiff has not been provided with the said Attachments, and therefore, is unable to determine their content, accuracy, or relevance to this action.

**Defendant's claim that "drug program" was "required" is false. (Defendant's Statement ¶¶ 4, 7 and 12).**

The Defendant had failed to cite any provision of its Program Statement which applies to the Plaintiff that supports an assertion he was required to participate in BOP drug programs. The indictment on which the Plaintiff was convicted and sentenced charged possession of firearm by felon and possession of firearm with obliterated serial number. There was nothing in the indictment regarding drugs, or which in any respect associated the offenses of charge with any activity involving drugs.



RECEIVED

FEB 27 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Neither, a claim that the Plaintiff had used drugs in the past, nor a drug-related conviction in 1987, in any way support a claim that the 1997 firearms possession "may have" been due to drugs. Additionally, the BOP has not shown that it has any authority to compel drug-abuse treatment programs on prisoners based upon un-supported assertions of past drug use.

Furthermore, if the Plaintiff were "required" under some BOP regulation to participate in a drug program, as is now claimed, the Defendant has failed to explain or show why this requirement has been removed from his classification scoring since leaving FCI Ray Brook. The Plaintiff has not participated in any such program in any of the institutions he has been confined in subsequently, and has not been held by those prisons' staffs to be required to do so. The information in Plaintiff's PRS which Defendant now refers to remains unchanged. Where Defendant now denies that drug-program requirement was erroneous, they fail to provide any basis for the subsequent determination of no requirement.

**Public Safety Factor was false data entry both times it was entered. (Defendant's Statement ¶¶ 6, 15, 18).**

The Defendant purports to admit that the Plaintiff's "Public Safety Factor was changed from Greatest to Moderate." (D.S. ¶ 15). However, this is a misrepresentation. See Ex. **D**, Custody Classification Form dated 10-01-1999, which clearly shows "PUB SFTY: NONE," as opposed to Exs. **A** and **C**, which show "PUB SAFETY: GRT SVRTY." The Plaintiff did not have a "changed" Public Safety Factor, he had <u>no</u> Public Safety Factor, as the one erroneously entered was <u>removed</u>.

There was never a basis for Public Safety Factor. BOP employees had entered inaccurate "instant offense rating" of "high" instead of "moderate." (See ex. **D**). The Defendant has not and can not identify any facts pertaining to the Plaintiff's conviction, sentence, or case otherwise, which conform to provisions of its Program Statement making any type of Public Safety Factor applicable.

The significance of the Public Safety Factor is that, after it had been determined in October 1999 that such classification was not applicable, Defendant's employees, A. Foura and H. Sims, for no legitimate or justifiable reason which Defendant has presented, re-applied the false classification in January 2005 (See Ex. **J**). False data of Public Safety Factor was the basis for raising the Plaintiff's custody level from +7 low (see Ex. **R**, Custody Classification Form 08-21-2003), to +12 medium (Ex. **J**). This change allowed the increase to +18 "high" after the DHO guilty-finding in June 2005. The Defendant has offered no other basis for the "high security" designation, or any factor which would justify or show how the Plaintiff's custody score could rise from +7 to +18, if it had not been improperly raised to +12 prior to the disciplinary action in June 2005. Fighting, per se, was not a basis for high-security custody. The other prisoner in the so-called "mutual fight" was not transferred to a penitentiary, but remained at medium level. Furthermore, the DHO finding was product of willful misrepresentation and conspiracy by staff. (See Ex. **S**, Declaration of Russell Stringfield). For the two and a half years, from July 2002 to December 2004, prior to the attempt by A. Foura and H. Sims to have the Plaintiff transferred to Bennettsville, S.C.,

Foura did not score a Public Safety Factor in the Plaintiff's custody classification.

**Greater Security Management Variable was without expiration date. (Defendant's Statement ¶¶ 11 and 30).**

The Greater Security Management Variable (MGTV), obtained by Defendant's employee M. Picerno, was in effect when the Plaintiff transferred to FCI Allenwood. The MGTV did not have an expiration date (see Ex. **T**, P.S. 5100.07, CH. 7, p. 15). When the Plaintiff was transferred to FCI Allenwood in 2002, P.S. 5100.08, to which the Defendant refers, did not exist, but in fact, was only adopted in November 2006, and thus, is of no relevance to the issues in this action. See also, Ex. **R**, which clearly shows "MGTV: GRTR SECU." The Defendant has not provided any application for MGTV other than that obtained by Picerno (Ex. **E**).

The Plaintiff's custody score was "low." The stated bases for MGTV given by Picerno in her Application Memorandum were not consistent with any criteria provided in the Program Statement (Ex. **G**). Without the false assertions in Picerno's MEMO, there would have been no justification for the Plaintiff's continued placement in a medium prison.

In ¶ 30 of its Statement of Genuine Facts, the Defendant refers the Court to the Plaintiff's "disciplinary history," which Defendant has failed to provide Plaintiff with a copy. Nevertheless, the Plaintiff's disciplinary history does not reflect violence, nor any factors which supported Greater Security custody as established in the Program statement. (Ex. **G**).

Compare Custody Classification Form dated 08-21-2003, (Ex. **R**), and Custody Classification Form dated 01-01-2005, (Ex. **J**). Both forms show, "FREQ DISCIP RPT: (2)1, TYPE DISCIP RPT: (3A) 1MOD," yet on Ex. **R** the Plaintiff was scored +7 "LOW" security, and on Ex. **J**, he was scored +12 "MEDIUM" security. The disciplinary report scoring is clearly the same. It is obvious that "disciplinary history" was not the basis for the "high" custody classification. Also, the Defendant can not claim that the purported fighting incident finding of June 3, 2005 was a basis for the increase because the Public Safety factor was applied on January 1, 2005, two months prior to the February 28, 2005 incident, and six months prior to the DHO finding and sanctions June 3, 2005.

As can be seen by comparing the 08-21-2003 classification form (Ex. **R**) and the 01-01-2005 classification form (Ex. **J**), a "GRT SCRTY MGTV" (Greater Security Management Variable) was applied on the 2003 form as necessary to justify keeping the Plaintiff, a "low" security inmate, in a medium security prison, however, on the 2005 form, the "PUB SFTY GRT SVRTY" (public safety, greatest severity) raised the Plaintiff's security level to +12 "medium" and the Management Variable was removed ("MGTV: NONE").

**Criminal History is not violent and BOP has record. (Defendant's Statement, ¶¶ 10, 12, and 15).**

The Plaintiff's allegation is not, as the Defendant suggests, that "outstanding warrant" information on September 1998 and March 1999 Program Review Reports "was the sole reason" for his security designation. The cumulative misrepresentations are the basis for

adverse determinations.

The Defendant's claim not to know if there is record of violence is irrelevant. The BOP has no record of violence, and therefore, has no basis for such classification. The BOP can't classify the Plaintiff as current violence felony offender and then justify such determination on the basis that it doesn't know if there may be record of violence. The Defendant denies that data indicating that the Plaintiff was subject to notification under 4042(b) was false, but offers no explanation as to why such classification was removed when challenged by the Plaintiff, or why Plaintiff is not currently so classified. When BOP officials classified the Plaintiff as current violent felony offender, but knew it had no record of violence, this was intentional, malicious, or willful making of false record. The defendant has capability to verify the Plaintiff's criminal history, and certainly has knowledge of its own records, (as demonstrated by its reference to unsupported information in the PRS). Therefore, the Defendant knows it has no record of the Plaintiff having been convicted, or even charged with any offenses listed in Appendix B regarding Public Safety factors.

**Work Performance Reports indicative of good communication with staff. (Defendant's Statement ¶ 8).**

The Defendant's claim to be un-informed as to the status of the Plaintiff's job, or whether his performance report ratings were "high" is disingenuous. The defendant can determine the importance of the Plaintiff's job merely by referring to its own Program Statement, and further by inquiry with its staff. The ratings on work

performance report forms (BP-324) are from 1 to 5, with 1 being the lowest and 5 being the highest. The Defendant must know these facts as, presumably the Defendant creates its administrative forms with purpose. The said BP-324s are a part of a file or record maintained by the Defendant. Therefore, the Defendant should know the significance of the fact that, on all BP-324s prepared at Ray Brook regarding the Plaintiff, he was scored either 4 or 5 in every category. The Defendant's denial is misplaced and inappropriate contentiousness.

Furthermore, the BP-324s do implicate the falsity of an assertion the Plaintiff was "an argumentative inmate as displayed by his difficulty communicating with staff." Category "G. Response to supervision and instruction," and "H. Ability to work with others," were consistently rated "5." These categories directly reflect a prisoners communicative and personal interaction conduct. The Defendant has failed to produce any evidence to support the assertion that the Plaintiff was argumentative, or had difficulty communicating with staff. The staff members for whom the Plaintiff worked did not hold such view. Picerno, as case manager, was custodian and maintainer of Plaintiff's Central File and knew or should have known of the BP-324s and ratings made by various staff members who prepared them. Thus, Picerno knowingly made false statement regarding the Plaintiff in her application for MGTV. Knowing false data entries were not uncommon at FCI Ray Brook. Christine Sullivan, was the unit manager of the housing unit in which the Plaintiff was assigned. (See Ex. H, Unit Manager's signature). Sullivan has pled guilty to falsifying

a prisoner's classification records in order to have the prisoner transferred to a low security facility. (See Exhibit **U**, news report). Sullivan and Picerno worked together as a "team" on matters involving the Plaintiff's classification. Sullivan knew, or should have known, and thus, presumably authorized or concurred in the false information input by Picerno to the Plaintiff's records.

**Freedom of Information Request was received by BOP. (Defendant's Statement, ¶ 22).**

The Defendant received the FOIA request seeking disclosure of the investigator's memorandum and other documents in the file pertaining to the Plaintiff's request for administrative remedy number 428661-F1. (See Exhibit **V**, Postal Service tracking data sheet). The FOIA request was delivered to BOP Central Office November 20, 2006. The Plaintiff does not "indicate a specific FOIA request number," because as alleged, BOP failed/refused to respond or acknowledge the request. The Plaintiff has executed a sworn declaration stating that his signature was forged on a fraudulent "withdraw" not for the purpose of closing the administrative remedy request. This is further willful, or malicious falsification of information maintained in a file, which has caused the Plaintiff adverse circumstance resulting in interference with access or exercise of a right.

**Plaintiff has suffered injuries while in BOP custody. (Defendants' Statement, ¶¶ 25 and 30).**

The Defendant's denial that the Plaintiff has sustained injuries is ludicrous at best as, the assault of December 15, 2000 is extensively documented. (See Exhibit **W**, reports of assaults and injuries).

The Defendant has not demonstrated, with substantive evidence which refutes the Plaintiff's evidence that, it can reasonably dispute any of the Plaintiff claims. The Defendant's employees, both at FCI Ray Brook and FCI Allenwood, willfully or maliciously entered false information into and maintained false information in files pertaining to the Plaintiff which did cause him adverse circumstances. Indeed, some of the instances of falsification of records involved criminal activity such as the forgery of the Plaintiff's signature.

WHEREFORE, the Defendant's motion to dismiss should be denied, and the Plaintiff's motion for summary judgment should granted.

Dated: February 21, 2008

Respectfully Presented,

Kenneth Eugene Speight
c/o P.O. Box 8000
Bradford, Pennsylvania
[16701]

**PROOF OF MAILING**

I, Kenneth Eugene Speight, hereby attest and affirm that a true and correct copy of the foregoing Reply to Defendant's Opposition to Summary Judgment, was sent via first class mail by presenting to corrections officials for processing to the U.S. Postal Service on February 21, 2008, to:

Charlotte A. Abel, AUSA
Office of the U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

Kenneth Eugene Speight

```
ALMBG  606.00 *    CUSTODY CLASSIFICATION FORM        *       08-21-2003
PAGE 001 OF 001                                                 15:24:35
                       (A) IDENTIFYING DATA
REG NO..: 12471-014              FORM DATE: 08-21-2003          ORG: ALM
NAME....: SPEIGHT,                                           CR HX PT: 21
                                     MGTV: GRTR SECU
PUB SFTY: NONE                       MVED: 02-27-2004
                          (B) BASE SCORING
DETAINER: (0) NONE               SEVERITY.......: (3) MODERATE
MOS REL.: 58                     PRIOR..........: (3) SERIOUS
ESCAPES.: (1) > 10 YR    IOR     VIOLENCE.......: (0) NONE
PRECOMMT: (0) N/A
                       (C) CUSTODY SCORING
TIME SERVED.....: (4)    75%     DRUG/ALC ABUSE.: (2) PAST 5 YRS
MENTAL STABILITY: (4)    ORABLE  TYPE DISCIP RPT: (3A) 1 MOD
FREQ DISCIP RPT.: (2)            RESPONSIBILITY.: (2) AVERAGE
FAMILY/COMMUN...: (4)

                    LEVEL AND CUSTODY SUMMARY ---
BASE CUST VARIANCE     TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+7   +21     0                LOW          MEDIUM          IN      SAME

G0005      TRANSACT   SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

EXHIBIT R

EXHIBIT 5

**DECLARATION OF RUSSELL STRINGFIELD**

I, Russell Stringfield, hereby declar and affirm that:

1. I am a federal prisoner currently incarcerated at FCI McKean, Bradford, PA., and at all time material to this case, I was incarcerated at FCI Allenwood, PA.

2. On February 28, 2005, I was placed in Special Housing Unit at FCI Allenwood, charged with fighting prisoner Kenneth Speight.

3. Lt. Shepard came in my cell after an incident and stated that he believed that I had been in a fight with Speight, and that, if I admitted to fighting with Speight, I would only get a couple of weeks in segregation, but if I didn't, I would be kept in segregation for 90 days under investigation.

4. I was sentenced to thirty (30) days disciplinary segregation for fighting.

5. During my disciplinary confinement, Lt. Shepard and Lt, Clarkson came by my cell on a number occasions and expressed their pleasure that I cooperated with them against Speight.



6. Lt. Shepard and Lt. Clarkson both were out in the open about there dislike for Speight and that they wanted something bad to happen to him.

7. Lt. Shepard was so pleased with me that he promised to get me released from my disciplinary segregation early, which he did, and I only served 15 days of my segregation confinement time and returned to general population.

I declare that the foregoing is true and correct to the best of my knowledge, understanding and belief, and in given under penalty of perjury, pursuant to 28 USC § 1746.

Dated: April 10, 2007

[signature]
Russell Stringfield
FCI McKean
P.O. Box 8000
Bradford, PA 16701

Table 7-3

| MANAGEMENT VARIABLE EXPIRATION TABLE | |
|---|---|
| DESCRIPTION | LENGTH |
| None | N/A |
| Judicial Recommendation | N/A |
| Release Residence/Planning | N/A |
| Population Management | Up to 18 months** |
| Central Inmate Monitoring Assignment | N/A |
| Medical/Psychiatric | 6 months |
| Program Participation | Up to 18 months, at the discretion of the Regional Director** |
| Work Cadre | N/A |
| PSF Waived* | N/A (However, if an inmate is transferred to a more secure institution based on behavior related to the waived PSF, this MGTV shall be removed.) |
| Mariel Cuban Detainee | N/A |
| Greater Security* | At the discretion of the Regional Director upon recommendation from institution staff (can be extended indefinitely)*** |
| Lesser Security* | N/A |

* ... application of a Management Security Level (MSL)

** ... expiration date is entered, SENTRY will default to an expi... date 12 months in advance

*** ... valid SENTRY date may be entered; if no date is ent... SENTRY will default to N/A

EXHIBIT 1

# ...o Marfan ...drome

...us local schools and ...its," Blow said.

**...CHANGE**

...ied to reschedule a ...e test scheduled for ...dents had not been ...tudying for the past ...l were having prob- ...trating, said Seton ...ven Cote.

...nent would not allow ...e rescheduled. ...ined that the test- ...has been running ...but she pointed out ...officials had no idea ...gic incident would ...n they ...ng date

...ed they ...s a cou- ... "It has ...eek for

...ll dur- ...hours of ...id Blow, ...ross the ...i cafete- ...th-graders took the

...so I walked through," ...gedy of the moment ...o concentrate on this

...the level of maturity ...yed, buckling down ...e circumstances. ...iculty handling this ...made me incredibly

...by the positive atti- ...a.

...ident Nick was look-

**"I was deeply touched by the solidarity and support of various local schools and guidance departments."**
Sister Debbie Blow

ing down... "It was ... cerned."

Cote ... mained ... "He sho... "It is ver... Marfan... men, wo...

grounds... United S... With M... tive tissu... as it shou... through... can affe...

though ... until lat... "There ... do," Cote ... Seton ... said, whi... at St. Pe... "We ar... to bring ... Cote said... long time... age don't ...

— Staff ... this repor...

...lassmates)," she said. ...as far as I was con-

**...PROBLEM**

...school community re- ...ver the boy's death. ... symptoms," she said. ...lt to diagnose." ...rome, which affects ...l children, has been

... in 5,000 people in the ... the disorder. ...Syndrome, the connec- ...ective and doesn't act ...ective tissue is found ...body, and the disorder ... systems such as the ...ton, eyes, heart and ... vessels, nervous sys- ...kin and lungs. ...ntially, what it ... is there is a genet- ...blem with his heart ...was not realized," Cote

...act, there is no sim- ...lood test or skin bi- ... diagnose the disor- ... person with Marfan ...drome is born with it, ...is may not be possible

...thing anybody could

...ing the funeral, she ... held at 11 a.m. today ...rch.

... that will help us to try ...osure with students," ...obviously closure is a ... Normally, kids at that ...deal with death."

...e Moore contributed to

# Ex-official at FCI Ray Brook pleads guilty

## Admits fixing data to transfer inmate

**By CASEY RYAN VOCK**
Staff Writer

PLATTSBURGH — A former administrator at the Federal Correctional Institution in Ray Brook pleaded guilty Wednesday to altering and creating information that led to the transfer of an inmate.

Christine Sullivan, 50, of Saranac Lake admitted in a U.S. District Court in Albany to using her computer and her password to alter or delete certain reports and classifications pertaining to a specific inmate, according to a news release from the U.S. Attorney's Office for the Northern District of New York.

Sullivan also admitted to creating a document containing false information that pertained to the inmate and submitting that document to the prison for processing.

As a result of the incorrect classifications and the fraudulent report, the inmate was transferred from the medium-security FCI Ray Brook, which houses only male offenders, to a low-security prison in another state.

Sullivan pleaded guilty to a felony charge of making a false writing or document.

The crime committed by Sullivan happened sometime between June and August 2005, according to Assistant U.S. Attorney Carlos A. Moreno.

"The (Federal) Bureau of Prisons is taking the appropriate steps to rectify the situation that occurred, if it has not already been rectified," Moreno said when asked if the prisoner had been returned to FCI Ray Brook or another medium-security prison.

Sullivan retired from her position in August 2005, according to FCI Ray Brook spokesperson Debbie Straight.

Straight would not disclose the title of the position held by Sullivan, but Moreno said he referred to her as an administrator throughout the investigation because she performed "a lot of different functions" at FCI Ray Brook in a "number of different positions."

Moreno and Straight would not release the name of the inmate, nor would they comment on any possible connection Sullivan might have had to the inmate.

Special agents from the Office of Inspector General of the U.S. Department of Justice conducted the investigation in coordination with the investigative staff at FCI Ray Brook.

When sentenced in August, Sullivan could face a maximum sentence of five years in prison, three years post-release supervision, a fine of as much as $250,000 and a $100 special assessment.

**E-mail Casey Ryan Vock at: cvock@pressrepublican.com**

EXHIBIT C

# ...HICKEN



# City changes parking rules for bingo players

...reer, she enjoyed attending educational conferences and taking classes in her field. After her retirement, she enjoyed her international travels and her winters in Florida with her Plattsburgh friends.

She is survived by her daughter and only child, Susan Ann (Light) Regan and her son-in-law, Michael Patrick Regan; three grandsons, Michael P. Regan Jr. of Jacksonville, Fla., and Brian C.

...family will receive friends and relatives at Brown Funeral Home at 29 Broad St., Plattsburgh, N.Y., on Friday, ...6, 2006, from 7 to 9 p.m. The funeral will be conducted at Brown Funeral Home on ...day, Oct. 7, 2006, at 10 ...

Interment will follow directly thereafter at the family plot ... Solitude Cemetery ... Alexander's Church in ...onville, N.Y. The Rev. J. Hauser, pastor of St. ... of the Lake, Cumberland Head and Our Lady of ..., Plattsburgh, will conduct the services.

## ...er Emilian ...inais, FIC

...AIRIE, Quebec — Brother Emilian Dauphinais died at the age of 102 ...rairie, Quebec, Canada, Oct. 2, 2006, after a ...y short period of ill... given his advanced ... Brother Emilian, son ... Alphonse Dauphinais ...ia Dionne was born ...eal, Quebec, Canada, ...7, 1904.

...ered the juniorate of ...ners of Christian In... at La Pointe-du-Lac, ...on March 3, 1917, and ...

# SOLDIER MEMORIAL

EXHIBIT U (2)

October 5, 2006

Press-Republican






**White flags line a field** in Warren, Vt., Wednesday, marking U.S. casualties in Iraq.

AP Photo/Toby Talbot





# Altering of inmate records nets sentence

By **ANDREA VanVALKENBURG**
Staff Writer

ALBANY — A Saranac Lake woman was sentenced in Federal Court Wednesday for altering federal prison inmate records.

Christine Sullivan, 50, pleaded guilty in May to a felony charge of making a false writing or document for using her computer to alter facility reports for a specific inmate.

According to a news release from the U.S. Northern District Attorney's Office, Sullivan submitted the altered documents through the Federal Correctional Institution Ray Brook system for processing.

The altered documents resulted in the inmate's transfer from the medium-level security prison to a low-level security prison out of state.

Sullivan was arrested for the false documentation following an extensive investigation by the United States Department of Justice Inspector General's Office and the investigative staff of the federal prison.

The Saranac Lake woman was sentenced to one year of probation, 200 hours of community service, a $5,000 fine and a $100 special assessment.

## PROPERTY TRANSFERS

PLATTSBURGH — Here's a list ... of land transactions ...




**Track/Confirm - Intranet Item Inquiry - Do**

**Item: 7005 1160 0000 6981 5074** **Date/Time Mailed:** 2006 07:35

| | | | |
|---|---|---|---|
| **Destination** | **ZIP Code:** 20534 | **City:** WASHINGTON | **State:** DC |
| **Origin** | **ZIP Code:** 16701-9998 | **City:** BRADFORD | **State:** PA |

**Class:** First Class

**Anticipated Delivery Date:** 11/17/2006

**Weight:** 0 **lb(s)** 1 **oz(s)** **Postage:** $0.39

**Firm Book ID:** 51P5 7730 4000 0003 7648

**Delv Rqmt:** Normal **PO Box?:** N

| Special Services | Associated Labels | Amount |
|---|---|---|
| CERTIFIED MAIL | 7005 1160 0000 6981 5074 | $2.40 |

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 11/20/2006 07:12<br>Firm Name: PRISONS 20534 R5<br>Recipient: 'S HORTON'<br>Request Delivery Record<br>View Delivery Signature and Address | WASHINGTON 20534 | K795412 |
| NOTICE LEFT | 11/19/2006 07:46 | WASHINGTON 20534 | P577304 |
| ARRIVAL AT UNIT | 11/19/2006 07:32 | WASHINGTON 20022 | P577304 |
| ACCEPT OR PICKUP | 11/15/2006 07:35 | BRADFORD 16701 | |

**Enter Request Type and Item Number:**

**Quick Search** ◉ **Extensive Search** ○

Explanation of Quick and Extensive Searches

Submit

*Version 1.0*

Inquire on multiple items.

Go to the Product Tracking System Home Page

EXHIBIT A (1)

November 9, 2006

Kenne[illegible] [illegible]ne Speight
c/o FC[illegible] [illegible]n
P.O. B[illegible] [illegible]0
Bradf[illegible] [illegible]nnsylvania
[16701]

Certified Mail # 7005 1160 0000 6981 5074

Wanda Hunt, Chief
FOIA/PA Section
Federal Bureau of Prisons
320 First Street, N.W
Washington, D.C. 20534

Re: **FREEDOM OF INFORMATION ACT/PRIVACY ACT R[illegible]**

Dear Ms. Hunt:

This is a non-commercial request pursuant t[illegible] Freedom of Information Act, 5 USC § 552, and the Privacy Ac[illegible] [illegible]SC § 552a, for disclosure of records in the custody of your "ag[illegible]" Please provide copies of the following:

1. All Memoranda, or any Memorandum prepared b[illegible] USP Allenwood staff regarding the "closure" of Administrative [illegible] Control No.ID #428661-F1;

If there are no documents responsive to thi[illegible] [illegible]est, please so indicate in your reply;

2. All files, records, or other documentation [illegible]d to Administrative Remedy No. 428661-F1, filed with Administra[illegible] [illegible]emedy Coordinator, Allenwood USP;

If there are no documents responsive to thi[illegible] [illegible]est, please so indicate in your reply.

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

SPEIGHT 12471-014 USP

| | |
|---|---|
| Postage | $ .39 |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $2.79 |

Postmark Here — BRADFORD PA 16701 USPS

Sent To Wanda Hunt, FBOP
Street, Apt. No.; or PO Box No. 320 First St, NW
City, State, ZIP+4 Washington, DC

PS Form 3800, June 2002 — See Reverse for Instructions

7005 1160 0000 6981 5074

[illegible]ption(s)" you may [illegible] [illegible]o claim, [illegible]egregatable porti[illegible] [illegible] record after [illegible]h is exempt, alon[illegible] [illegible] the legal [illegible]etion.

[illegible] of your timely co[illegible] [illegible]ce.

Cordially you[illegible]

Kenneth Edge[illegible] [illegible]ght

EXHIBIT V (2)

EXHIBIT W (1)



U.S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution
P. O. Box 300
Ray Brook, NY 12977-0300

**Date:** December 15th. 2000

**Reply To**
**Attn Of:** F. Mason, Senior Officer Specialist.

**Subject:** Assault in SHU

**To:** S. Gonzales, Lieutenant.

On 12/15/00 at approximately 1845 hours, Officer Sharlow called out that he needed assistance at cell 103. This cell is occupied by inmates Speight #12471-014 (b)(6), (b)(7)(C) When I arrived at the cell, both inmates were placed in restraints and separated. Cell 103 was in disarray with papers thrown all over the floor, blood smeared on the right hand wall and a small drop on the lower bunk sheet. Inmate Speight was moved to the SHU medical room and seen by the duty PA. Inmate Speight had several cuts and bruises on his face and head. When I questioned inmate Speight about the incident, (b)(5), (b)(6), (b)(7)(C)

(b)(5), (b)(6), (b)(7)(C), (b)(7)(F)



FOI EXEMPT
LOU - SENSITIVE

(b)(5), (b)(6), (b)(7)(C), (b)(7)(F)

**MEDICAL DATA:**

Inmate Kenneth Speight was medically examined on July 18, 2000. The examination revealed he sustained a 1 cm., fairly deep laceration on the outer aspect of his upper lip, as well as a small laceration on his lower lip. His injuries were treated with minor first aid.

(b)(6), (b)(7)(C)

**SUMMARY AND CONCLUSION:**

(b)(5), (b)(6), (b)(7)(C), (b)(7)(F)

**ATTACHMENTS:**

1. Memorandum from Lieutenant P. Jarisch, dated July 18, 2000.
2. Memorandum from Senior Officer Henry J. Celenzo, dated July 18, 2000.
3. Anonymous note regarding the incident.
4. Inmate Injury Assessment and Follow-up for Inmate Kenneth Speight, #12471-014, dated July 18, 2000.

EXHIBIT W (2)

Federal Bureau of Prisons (Medical)

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| FCI RBK | Speight, Kenneth | 12471-014 |
| 4. Injured's Duty Assignment | 5. Housing Assignment | 6. Date and Time of Injury |
| AM Kitchen | Seneca B | 7/18/00 1200 |
| 7. Where Did Injury Happen (Be specific as to location) | Work Related? ☐ Yes ☒ No | 8. Date and Time Reported for Treatment |
| In the gym | | 7/18/00 1205 |

9. Subjective: (Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)

-I/m states he was playing basketball and was hit in the lip/mouth by another player's head while blocking a shot.

X
Signature of Patient

10. Objective: (Observations or Findings from Examination) X-Rays Taken ___ Not Indicated ✓ X-Ray Results

R side of upper lip has ~1cm, fairly deep laceration on the outer aspect. Lower lip, [illegible] has a laceration but much smaller + less deep [illegible] buccal mucosal involvement. Minimal bleeding.

11. Assessment: (Analysis of Facts Based on Subjective and Objective Data)

1) Lip laceration

Tetanus up-to-date 1998

12. Plan: (Diagnostic Procedures with Results, Treatment and Recommended Follow-up)

1) Sutures could be indicated but are not medically required. Pt wishes not to have them if they are not necessary to satisfactory healing.

2) Wound cleansed thoroughly, [illegible] gauze pads to hold as compression and [illegible] to [illegible] in Unit x 20 min

13. This Injury Required:

☐ a. No Medical Attention
☒ b. Minor First Aid
☐ c. Hospitalization
☒ d. Other (explain) assessed [illegible]
☐ e. Medically Unassigned

Original - Medical File
Canary - Safety
Pink - Work Supervisor (Work related only)
Goldenrod - Correctional Supervisor

Self Carboned Form - If ballpoint pen is used, PRESS HARD

FOI EXEMPT

SENSITIVE
Limited Official Use

USP LVN ---- Previous editions not usable ---- BP-362(60) FEBRUARY 1988

---

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

INMATE INJURY ASSESSMENT AND FOLLOWUP (Medical)

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| FCI RBK | Speight, Kenneth | 12471-014 |
| 4. Injured's Duty Assignment | 5. Housing Assignment | 6. Date and Time of Injury |
| unassigned. | SHU | 12-15-00 18:40 |
| 7. Where Did Injury Happen (Be specific as to location) | Work Related? ☐ Yes ☒ No | 8. Date and Time Reported for Treatment |
| SHU cell 103 | | 12-15-00 18:45 |

9. Subjective: (Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)

"I was sitting there reading my mail & he started swinging at me." "He needs to be on his medication"

Handcuffed
Signature of Patient

10. Objective: (Observations or Findings from Examination) X-Rays Taken ___ Not Indicated X X-Ray Results

A+OX3, NAD, 1/3" superficial laceration right cheek bone, moderate sized nodule Rt side of forehead with bruising observed entire length of forehead. 2" bruising Rt side of nose, 1" bruising left side of nose, [illegible] abrasion bridge of nose - [illegible] - no injuries observed bilateral hands or any other injuries

11. Assessment: (Analysis of Facts Based on Subjective and Objective Data)

1/3" superficial laceration, abrasion + bruises d/t fight

12. Plan: (Diagnostic Procedures with Results, Treatment and Recommended Follow-up)

wounds cleaned with normal saline
tetanus up to date 2-18-98
Assessed per custody

13. This Injury Required:

☐ a. No Medical Attention
☐ b. Minor First Aid
☐ c. Hospitalization
☒ d. Other (explain) see [illegible]

Signature of Physician or Physician Assistant: K. BURDO, RN

Original - Medical File
Canary - Safety
Pink - Work Supervisor (Work related only)
Goldenrod - Correctional Supervisor

Self Carboned Form - If ballpoint pen is used, PRESS HARD



FOI EXEMPT

U.S. GOVERNMENT

**MEMORANDUM**

FEDERAL BUREAU OF PRISONS
FEDERAL CORRECTIONAL INSTITUTION
ALLENWOOD, PA.

DATE: 02/28/05

REPLY: R. SPOTTS S.O.

SUBJECT: POSSIBLE ALTERCATION I/M SPEIGHT #41231-083 & I/M (b)(6)(b)(7)(c)(b)(7)(F)

To: OPERATION'S. LT/ LT SHEPARD

On 2/28/05 at approximately 7:46PM, I responded to the 3rd range near cell 205 for an inmate lying on the ground. I/M Speight #41231-083 was lying on the ground conscious but not responsive. Upon further examination of I/M Speight, I discovered blood on the range in the area where I/M Speight's head. Additionally, I/M Speight was tightly grasping a pen in his right hand. The pen cap was at the top of the pen exposing the ball point. I removed this item from his hand placed it temporarily on the wicket of cell 204. The pen was then given to the Lt's Office. (b)(6)(b)(7)(c)(b)(7)(F)

EXEMPT

EXHIBIT W (3)

EXEMPT

EXHIBIT W (4)

Unit 1A on third tier outside of Cell 205
Date: 2-28-05
Time 8:15 pm
By: Rich Sweithelm, Senior Officer Specialist

A toff of Hair

Blood and Hair



Inmate Speight #12471-014
Date:2-28-05
Time 8:10 pm
By Rich Sweithelm, Senior Officer Specialist





EXEM

EXE